UNITED STATES of America, Plaintiff–Appellee,

v.

Anthony Wayne FAGAN, Defendant–Appellant.

UNITED STATES of America, Plaintiff–Appellee,

v.

Anthony Wayne FAGAN, Defendant–Appellant.

Nos. 88–5439, 89–50549 and 90–50172.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 10, 1992.

Decided June 25, 1993.

1010

Maria E. Stratton, Talcott, Lightfoot, Van-develde, Woehrle & Sadowsky, Los Angeles, CA, for defendant-appellant.

Russell G. Petti, Asst. U.S. Atty., Los Angeles, CA, for plaintiff-appellee.

Before: FERGUSON, CANBY, and THOMPSON, Circuit Judges.

CANBY, Circuit Judge:

In these consolidated appeals, Anthony Wayne Fagan challenges his jury conviction and sentence for possession of cocaine base with intent to distribute and distribution of cocaine base within 1000 feet of a school, in violation of 21 U.S.C. §§ 841(a)(1) & 845a (now codified at 21 U.S.C. § 860). He also challenges the sentence imposed after he pleaded guilty in a separate case to possession of cocaine base with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). We vacate both sentences and remand.

# I. FACTS & PROCEDURAL BACKGROUND

The procedural history of these cases is tortuous but important to our decision. On March 8, 1988, police officers observed Fagan and another man at a house in Los Angeles engaged in what appeared to be the sale of cocaine base. The officers followed and stopped one of Fagan's customers, and discovered that she possessed cocaine base. The police then arrested Fagan. On March 18, 1988, a federal grand jury returned an indictment against Fagan based on the March 8th incident. This indictment charged him with one count of possession of cocaine base with intent to distribute, one count of distribution of cocaine base within 1000 feet of a school, and two counts of being a felon in possession of a firearm ("Case I"). Case I was assigned to District Judge Pfaelzer.

On March 18, 1988, knowing that the federal indictment and an arrest warrant were imminent, police officers were conducting surveillance of Fagan's residence. The officers again observed that Fagan and another man appeared to be selling drugs. The officers therefore stopped two of Fagan's customers and subsequently arrested them for possession of cocaine base. Later that day, when they were notified that the federal arrest warrant stemming from the events of March 8th had been issued, the officers arrested Fagan.

On April 1, 1988, a federal grand jury returned another indictment against Fagan based on the events of March 18th. This second indictment charged him with one count of possession of cocaine base with intent to distribute and two counts of distribution of cocaine base within 1000 feet of a school ("Case II"). Case II was assigned to District Judge Tevrizian. Fagan moved to consolidate the two cases, but the government opposed the motion, and it was denied.[1]

---

1. We cannot discern any legitimate reason for the government's opposition to Fagan's motion to consolidate the cases. As we will discuss more fully in this opinion, the fact that the cases were not consolidated had severe consequences for Fagan. Not only was he denied the benefit of a plea agreement he negotiated with the government to dispose of both cases, but also he received a substantially longer sentence than he would have if the charges had been consolidated for sentencing.

On May 17, 1988, in Case I, Fagan entered a guilty plea to one count of possession of cocaine base with intent to distribute. Pursuant to the plea agreement, the government agreed to dismiss the other drug distribution count.[2] Under the terms of the plea agreement, Fagan also was supposed to plead guilty in Case II to one count of distribution of cocaine base within 1000 feet of a school, and the government agreed to dismiss all the other counts in that case.

On May 19, 1988, the government moved to set aside Fagan's guilty plea in Case I. The government asserted that it had agreed to the plea because the prosecutor mistakenly believed that an information alleging Fagan's prior convictions had not been properly filed with the district court. Therefore, the prosecutor thought that those convictions could not be a factor at the time of the plea hearing. In fact, the information had been properly filed. The prior convictions alleged in the information, had they been given effect, would have substantially increased the possible sentence faced by Fagan.[3] Fagan opposed the government's motion to set aside the plea and filed a motion to enforce the plea agreement. On May 23, 1988, Fagan also filed a motion before Judge Tevrizian to enforce the terms of the plea agreement that required the government to present the agreement to the district court in Case II.

On June 6, 1988, in Case I, Judge Pfaelzer granted the government's motion to withdraw the plea and denied Fagan's motion to enforce the plea agreement. Later that day, Judge Tevrizian also denied Fagan's motion to enforce the plea agreement in Case II on the ground that "this Court never entered into any plea agreement with Mr. Fagan under [Fed.R.Crim.P.] 11. The Court, until it personally, in open court, and on the record, discusses a plea agreement, is not bound by any plea agreement worked out between the government and or defense counsel." June 6, 1988, Reporter's Transcript at 3–4.

On July 27, 1988, a jury trial began in Case II; Fagan was convicted of all three counts. On October 10, 1989, Judge Tevrizian sentenced him to 175 months in prison to be followed by five years of supervised release. Fagan appealed his conviction and sentence.

On January 8, 1990, in Case I, Judge Pfaelzer reconsidered her denial of Fagan's motion to enforce the plea agreement. Judge Pfaelzer granted Fagan's motion because of this court's decision in *United States v. Partida–Parra*, 859 F.2d 629 (9th Cir.1988). Therefore, Fagan again pleaded guilty to one count of possession of cocaine base with intent to distribute. The government agreed to withdraw the information alleging the prior convictions. On March 19, 1990, Judge Pfaelzer sentenced Fagan to 120 months in prison to be followed by five years of supervised release; this sentence was ordered to run consecutively to the sentence imposed by Judge Tevrizian in Case II. Fagan appealed this sentence as well.

## II. ANALYSIS

In his appeal from the judgment in Case II, Fagan challenges (1) the denial of two pre-trial motions, (2) the admission of certain evidence at trial, and (3) the jury instructions. In his appeal from the judgment in Case I, Fagan contends that the district court erred by ordering that his sentence run consecutively to the sentence he received in Case II. In his appeals from both cases, Fagan challenges the two-point increase in his offense level under the Sentencing Guidelines for his role in the offenses.

### A. Pre-trial Motions
### 1. Denial of Motion to Enforce the Plea Agreement

Fagan contends that the district court erred by failing to enforce the plea agreement that had been placed on the record, and initially had been accepted, by Judge Pfaelzer in Case I. Under the terms of that

---

2. The government previously had moved to dismiss the firearms counts on the ground that the firearms had been illegally seized.

3. At the plea hearing, Judge Pfaelzer had informed Fagan that he faced a minimum manda-

tory sentence of five years and a maximum sentence of forty years. With the prior convictions alleged in the information, however, he faced a minimum mandatory sentence of ten years and a maximum of life imprisonment.

agreement, Fagan was supposed to enter guilty pleas in both cases. Therefore, Fagan argues, the government breached its promise by failing to offer the plea agreement to Judge Tevrizian in Case II. We agree with Fagan's contention that the government reneged on its promise, but this conclusion does not resolve the issue he presents. We must determine what remedy exists for the government's breach of the plea agreement in light of the unusual procedural posture of this case.[4]

■ Whether the district court is required to enforce a plea agreement is a question of law, which we review de novo. *United States v. McConney*, 728 F.2d 1195, 1201 (9th Cir.) (en banc) (questions of law reviewed de novo), *cert. denied*, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984). A plea agreement that has not been entered and accepted by the trial court does not bind the parties. *Mabry v. Johnson*, 467 U.S. 504, 507–08, 104 S.Ct. 2543, 2546–47, 81 L.Ed.2d 437 (1984); *see also United States v. Gonzalez*, 918 F.2d 1129, 1133 (3d Cir.1990) ("a plea agreement is neither binding nor enforceable until it is accepted in open court"), *cert. denied*, 498 U.S. 1107, 111 S.Ct. 1015, 112 L.Ed.2d 1097 and — U.S. ——, 111 S.Ct. 1637, 113 L.Ed.2d 733 (1991). In contrast, once the district court accepts a guilty plea, absent fraud or breach of the plea agreement by the defendant, the court has no authority to vacate the guilty plea because of a government motion asserting "that a mistake of fact (on [the government's] part) prevented the formation of a binding agreement." *Partida–Parra*, 859 F.2d at 633. If the government has breached a plea agreement by successfully moving to vacate a guilty plea that the district court had accepted, and the defendant has been convicted after a jury trial, "[t]he appropriate remedy is to reinstate the guilty plea and remand for resentencing." *Id.* at 635 (citations omitted).

Here, the fact that a guilty plea had not been entered or accepted by Judge Tevrizian in Case II distinguishes this case from *Partida–Parra;* we cannot simply reinstate a guilty plea. *See id.* at 635 n. 7 (noting that the district court's acceptance of Partida–Parra's guilty plea distinguished his case from one in which "the plea agreement had not yet been presented to the district court for acceptance and, in that sense, was unconsummated") (citing *Government of Virgin Islands v. Scotland*, 614 F.2d 360, 365 (3d Cir.1980)); *see also Mabry*, 467 U.S. at 507–08, 104 S.Ct. at 2546–47; *Gonzalez*, 918 F.2d at 1133.

■ Nevertheless, as of May 17, 1988, Fagan had entered and the district court had accepted a guilty plea in Case I. During the plea hearing before Judge Pfaelzer, the prosecutor stated:

> [T]his plea agreement encompasses two cases. This is the first case. The second case is set before Judge Tevrizian ... and the agreement is that Mr. Fagan is going to also plead guilty in that case to the 845(A) [sic] count which I believe is count two and it is commonly known as the schoolyard statute.

May 17, 1988, Reporter's Transcript at 33. The government's subsequent discovery that its decision to enter into this plea agreement was based on a mistake of fact did not nullify the agreement or excuse the government from compliance with its terms. *See Partida–Parra*, 859 F.2d at 633–35. Therefore, the government was obligated to present the plea agreement to the district court in Case II, and the district court erred by "failing to hold the government to its obligation under the plea agreement." *See id.* at 635; *see also Santobello v. New York*, 404 U.S. 257, 262, 92 S.Ct. 495, 499, 30 L.Ed.2d 427 (1971) ("when a plea rests in any significant degree on a

---

4. The government argues that Fagan had an adequate remedy for the breach because he received a jury trial, and nothing he said during the plea hearing before Judge Pfaelzer was used against him at trial. We previously have rejected this argument. *See Partida–Parra*, 859 F.2d at 635 (accepting this argument "would, in effect, allow the government, any time it might have second

thoughts about a plea bargain, to breach the agreement by reindicting the defendant on the greater charges, thereby 'restoring' the defendant's 'right to trial' on those charges[; s]uch a practice would, of course, render the government's plea-agreement obligations meaningless").

promise or agreement of the prosecutor, ... such promise must be fulfilled").[5]

There exists the possibility that Judge Tevrizian would have rejected the plea agreement even if the government had presented it to him. *See* Fed.R.Crim.P. 11(e)(2) & (4) (district court has discretion to reject a plea agreement reached by the parties). Despite this possibility, however, we are convinced that the government's failure to offer the plea agreement to Judge Tevrizian was prejudicial to Fagan; he was convicted of three felony charges instead of the single count contemplated by the plea agreement, and he was effectively precluded from a two-point decrease in his offense level under the Sentencing Guidelines for acceptance of responsibility.

We conclude that Judge Tevrizian, armed with the knowledge that the government breached its obligation to present the plea agreement to him, should be given an opportunity to determine in the first instance an appropriate remedy. Although this list is not exhaustive and is intended only to provide guidance to the district court, we note that Judge Tevrizian may choose to effectuate the plea agreement, vacate one or more of Fagan's convictions, or modify his sentence. Accordingly, we vacate the sentence imposed by the district court in Case II and remand for reconsideration of the plea agreement and resentencing.[6]

## 2. Denial of Motion to Relieve Defense Counsel

Fagan contends that the district court erred by denying his attorney's motion to be relieved as counsel. Fagan argues that the district court denied the motion without in-

quiring adequately into the relationship between him and his attorney. We disagree.

Michael Treman was appointed to represent Fagan in both cases. On July 11, 1988, Judge Pfaelzer granted Treman's motion to be relieved as counsel in Case I because she found that a conflict existed between him and Fagan. Judge Pfaelzer's ruling was based primarily on the fact that Fagan had attempted to represent himself in Case I by preparing and seeking to file papers with the court. On July 13, 1988, Treman filed a motion to be relieved as counsel in Case II. The trial of Fagan and a co-defendant was scheduled to begin on July 26, 1988. Judge Tevrizian held a hearing on July 18, 1988, and denied the motion on the grounds that (1) substitution of counsel would require a continuance of the trial, and he was not willing to continue it; (2) Fagan had not expressed any dissatisfaction with Treman's representation to Judge Tevrizian, nor had Fagan sought to file any papers or otherwise represent himself; and (3) there was no evidence of a conflict between Fagan and Treman in Case II.

We review for an abuse of discretion the denial of a motion to substitute counsel. *United States v. Wagner*, 834 F.2d 1474, 1481 (9th Cir.1987). A trial court's refusal to allow substitution of attorneys may result in the denial of effective assistance of counsel if the defendant and his attorney are embroiled in an "irreconcilable conflict." *Brown v. Craven*, 424 F.2d 1166, 1170 (9th Cir.1970).

In applying the *Craven* rule, three factors are considered: (1) the timeliness of the motion to dismiss counsel; (2) the adequa-

---

**5.** The chronology of the relevant events contributed to the problems this case presents. On June 6, 1988, when both district judges denied Fagan's motions to enforce the plea agreement, this court had not yet decided *Partida–Parra;* the district courts thus did not have the benefit of its analysis. Similarly, prior to our decision in *Partida–Parra*, the government may not have been fully aware that its mistake of fact was not a proper basis for failing to fulfill its obligations under the plea agreement. By the time the *Partida–Parra* decision was issued on September 20, 1988, Fagan already had been tried and convicted in Case II. Therefore, Judge Tevrizian, unlike Judge Pfaelzer, did not have an opportunity to

reconsider his denial of Fagan's motion to enforce the plea agreement in light of *Partida–Parra*.

**6.** The government in Case I, in ultimately agreeing to withdraw the information alleging Fagan's prior convictions, represented that it would treat the information as if it never existed. The district court subsequently dismissed the information. Accordingly, in determining on remand a remedy for the government's breach, Judge Tevrizian may not consider the prior convictions alleged in the information.

cy of the court's inquiry into defendant's complaint; and (3) whether the conflict between defendant and his counsel was so great that it resulted in a total lack of communication preventing an adequate defense.

*United States v. McClendon,* 782 F.2d 785, 789 (9th Cir.1986).

■ Considering these factors, we conclude that the district court did not abuse its discretion by denying the motion. First, granting the motion would have required a continuance of the trial. Second, Judge Tevrizian's questioning of Treman and Fagan about the reasons for the motion provided an adequate basis for his decision. Third, nothing in the record suggests that the alleged conflict between Fagan and Treman resulted in a total breakdown of communication or prevented Treman from adequately representing Fagan at trial. Under these circumstances, Judge Tevrizian was not required to grant Treman's motion to withdraw simply because Judge Pfaelzer had found that a conflict existed in the case before her.

## B. Evidentiary Rulings

Fagan argues that the district court abused its discretion by admitting in evidence a rifle, ammunition, and testimony regarding his membership in a gang. We find no error.

Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. Fed. R.Evid. 403. "All evidence which tends to establish the guilt of a defendant is, in one sense, prejudicial to that defendant, but that does not mean that such evidence should be excluded." *United States v. Bailleaux,* 685 F.2d 1105, 1111 (9th Cir.1982).

Unfair prejudice results from an aspect of the evidence other than its tendency to make the existence of a material fact more or less probable, *e.g.,* that aspect of the evidence which makes conviction more likely because it provokes an emotional response in the jury or otherwise tends to affect adversely the jury's attitude toward the defendant wholly apart from its judgment as to his guilt or innocence of the crime charged.

*Id.* (emphasis in original) (citations omitted). "The district judge is given wide latitude in determining the admissibility of evidence under this standard." *United States v. Kinslow,* 860 F.2d 963, 968 (9th Cir.1988), *cert. denied,* 493 U.S. 829, 110 S.Ct. 96, 107 L.Ed.2d 60 (1989).

■ The reference to Fagan's gang membership was made during Treman's cross-examination of a government witness, Police Officer Tyus, regarding Tyus's ability to recognize Fagan from a distance. Treman asked Tyus whether he would have been able to identify Fagan from a distance without using binoculars. Tyus replied: "Oh, yeah, I can identify Fagan. Sure. I have seen him. I have come in contact with him several times. He's a gang member. I work gangs." July 28, 1988, Reporter's Transcript at 417. Treman did not move to strike any part of this answer.

This testimony was probative of Tyus's ability to recognize and identify Fagan. Moreover, the brief reference to Fagan's gang membership was not likely to provoke an emotional response in the jury wholly apart from its judgment regarding his guilt or innocence of the offenses charged. *See Bailleaux,* 685 F.2d at 1111. Accordingly, the district court did not abuse its discretion by allowing this testimony. *See Kinslow,* 860 F.2d at 968.

■ Fagan also argues that the gun and ammunition found in his residence were only marginally relevant and served primarily to inflame the jury. This argument fails. It is well-settled that in a trial on drug trafficking charges, firearms are relevant and admissible to prove the defendant's involvement in the drug trade and intent to distribute. *See, e.g., United States v. Gillock,* 886 F.2d 220, 222 (9th Cir.1989) (revolver found in defendant's bedroom closet relevant to his intent to distribute methamphetamine); *United States v. Savinovich,* 845 F.2d 834, 837 (9th Cir.) ("[b]ecause guns are used in many drug transactions, it may reasonably be inferred that an armed possessor of drugs has something more in mind than mere personal use[;]" therefore, under Fed.R.Evid. 403, "guns seized from a defendant's residence

are admissible in a trial for possession of a controlled substance with intent to distribute") (quotation omitted), *cert. denied,* 488 U.S. 943, 109 S.Ct. 369, 102 L.Ed.2d 358 (1988); *United States v. Issacs,* 708 F.2d 1365, 1371 (9th Cir.) ("trial judge has discretion to admit evidence of firearms in drug trafficking cases"), *cert. denied,* 464 U.S. 852, 104 S.Ct. 165, 78 L.Ed.2d 150 (1983).

### C. Jury Instructions

■ Fagan next contends that the district court erred by giving a jury instruction regarding the absence of witnesses. Because Fagan did not object contemporaneously, we review the instruction for plain error. *United States v. Bustillo,* 789 F.2d 1364, 1367 (9th Cir.1986).

At trial, Fagan's co-defendant submitted proposed jury instructions, including an instruction from E. Devitt & C. Blackmar, *Federal Jury Practice and Instructions* § 17.19 (3d ed. 1977), entitled "Absence of Witness." Judge Tevrizian informed Treman that he also should submit jury instructions, unless he wanted to rely on those submitted by co-defendant's counsel. Treman stated that he would not offer any additional instructions, and he did not object when the "absence of witness" instruction was given.

■ The challenged instruction was applicable because both the government and the defense failed to call certain witnesses who might have provided material testimony on issues in the case. Moreover, on five separate occasions, the district court admonished the jury that: "The law never imposes upon a defendant in a criminal case the burden or duty of calling any witnesses or producing any evidence." Given this record, we conclude that the district court did not commit plain error by giving the instruction. *See Bustillo,* 789 F.2d at 1367 (reversal of a conviction because of plain error is an "exceptional remedy" that is invoked only "to prevent a miscarriage of justice or to preserve the integrity and reputation of the judicial process").[7]

### D. Sentencing Issues

#### 1. Adjustment of Offense Level for Role in the Offenses

■ Fagan asserts that both district courts erred by increasing his offense level under U.S.S.G. § 3B1.1(c), which provides for a two-level increase upon a finding that the defendant was an organizer, leader, manager, or supervisor of an offense involving less than five participants. We review these findings for clear error. *United States v. Peters,* 962 F.2d 1410, 1415 (9th Cir.1992).

Fagan first argues that the district courts erred because neither court made specific findings to support its application of section 3B1.1(c). We disagree. The records show that each district judge considered the information in the presentence report and adopted the government's argument in favor of the two-level increase. In addition, before each district court, Fagan had an opportunity to present evidence and an argument to the contrary. "That is all that is required [to support a section 3B1.1(c) adjustment]." *Peters,* 962 F.2d at 1415 (citing *United States v. Rigby,* 896 F.2d 392, 394 (9th Cir.1990)).

Fagan next argues that there was no evidence to support the district court's findings that he was an organizer, leader, manager, or supervisor. The records belie this argument; in both cases the evidence showed that Fagan exercised control over his co-defendants in the commission of the offenses. When a buyer arrived at the gate to the house from which Fagan was selling cocaine base, one of Fagan's co-defendants would approach the buyer, get the money, and return to Fagan. Fagan, who remained on the porch, would take the money, count it, and give the cocaine base to his co-defendants, who would then

---

7. During rebuttal, in response to an argument made by co-defendant's counsel, the prosecutor did refer to the defendants' failure to present certain witnesses. This argument did not constitute plain error, however. *See, e.g., United States v. Fleishman,* 684 F.2d 1329, 1343 (9th Cir.) ("[a] prosecutor may properly comment upon a defendant's failure to present witnesses so long as it is not phrased as to call attention to defendant's own failure to testify"), *cert. denied,* 459 U.S. 1044, 103 S.Ct. 464, 74 L.Ed.2d 614 (1982). The district court cured any possible error by sustaining the defendants' objections to this argument and immediately admonishing the jury that the defense was not required to produce any witnesses or evidence.

deliver it to the buyer. Furthermore, Fagan resided in the house and exercised control over it. In light of this evidence, the district courts' findings that Fagan was an "organizer, leader, manager, or supervisor" are not clearly erroneous. *See United States v. Carvajal,* 905 F.2d 1292, 1296 (9th Cir.1990) (where defendant exercised control over person who made a single delivery of cocaine, section 3B1.1 adjustment for major role in the offense was not clearly erroneous).

### 2. Consecutive Sentence Imposed in Case I

 Fagan asserts that the district court did not have discretion under U.S.S.G. § 5G1.3 to impose a sentence in Case I that ran consecutively to the sentence imposed in Case II and that, instead, the court was required to impose a concurrent sentence. We review de novo the district court's application of the Sentencing Guidelines. *United States v. Uzelac,* 921 F.2d 204, 205 (9th Cir. 1990).

"The district court is to apply the version of the Sentencing Guidelines in effect on the date of sentencing." *United States v. Mooneyham,* 938 F.2d 139, 140 (9th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 443, 116 L.Ed.2d 461 (1991). Fagan was sentenced in Case I on March 19, 1990. The version of U.S.S.G. § 5G1.3 then in effect gave the district court discretion to impose a consecutive sentence. *See United States v. Warren,* 980 F.2d 1300, 1303 (9th Cir.1992).

Fagan's argument that the district court was required to impose a concurrent sentence is premised on a 1991 amendment to

U.S.S.G. § 5G1.3. The 1991 version of this section provided that when a district court imposed a sentence on a defendant who was subject to an undischarged term of imprisonment:

> if the prior undischarged term of imprisonment resulted from a federal offense and was imposed pursuant to the Sentencing Reform Act, the sentence for the instant offense shall be imposed to result in a combined sentence equal to the total punishment that would have been imposed under § 5G1.2 (Sentencing on Multiple Counts of Conviction) had all the sentences been imposed at the same time.

U.S.S.G. § 5G1.3(b) (Nov. 1991) (as amended by U.S.S.G. app. C, amend. 385 (Nov. 1991)).[8] The government concedes that if this amendment had been in effect at the time Fagan was sentenced, the district court would have been required to impose a concurrent sentence.[9] In addition, if the 1991 amendment to section 5G1.3 had been retroactive, Fagan might have been entitled to an adjustment of his sentence pursuant to 18 U.S.C. § 3582(c)(2). *See* U.S.S.G. § 1B1.10(b). It is clear, however, that the Sentencing Commission did not intend the 1991 amendment to section 5G1.3 to be retroactive, because the Commission did not include it on the list of amendments that are to be given retroactive effect. *See* U.S.S.G. § 1B1.10(d) (Nov. 1991); *Mooneyham,* 938 F.2d at 140–41 (only amendments listed in U.S.S.G. § 1B1.10 apply retroactively); *see also United States v. Conkins,* 987 F.2d 564, 572 (9th Cir.1993) (1991 amendment to section 5G1.3 does not

---

8. The 1991 amendment has been superseded by a 1992 amendment to section 5G1.3. U.S.S.G. § 5G1.3 (Nov. 1992) (as amended by U.S.S.G. app. C, amend. 465 (Nov. 1992)). The guideline now provides that a defendant in Fagan's position be given a concurrent sentence if "the undischarged term of imprisonment resulted from offense(s) that have been fully taken into account in the determination of the offense level" for the second sentence. U.S.S.G. § 5G1.3(b) (1992). Otherwise, the second sentence shall be imposed consecutively "to the extent necessary to achieve a reasonable incremental punishment" for the second offense. U.S.S.G. § 5G1.3(c) (1992).

We view the 1992 amendment as less favorable to Fagan than the 1991 amendment, but more favorable to him than the earlier version under

which he was sentenced. Because the 1991 amendment was more favorable to Fagan than either the prior guideline or the 1992 amendment, we address his argument that the 1991 amendment applies. Had he been entitled to the benefit of the 1991 amendment, he could not be subjected to a more harsh sentencing provision upon his resentencing. *See United States v. Gross,* 979 F.2d 1048, 1052–53 (5th Cir.1992).

9. Under the 1991 amendment, the district court could have imposed a consecutive sentence on Fagan only by departing from the guideline range and following the usual procedures for a departure. *See United States v. Pedrioli,* 931 F.2d 31, 32 (9th Cir.1991) (citing 18 U.S.C. § 3584(a)).

retroactively invalidate a consecutive sentence imposed under the prior version).

Fagan's argument that the 1991 amendment should apply retroactively because it merely clarified the previous version of section 5G1.3, but did not substantially change it, is untenable. *See Warren,* 980 F.2d at 1303 ("[t]he 1989 version and the 1991 version of the guideline differ dramatically"); *see also United States v. Martinez,* 946 F.2d 100, 102 (9th Cir.1991) ("where the circumstances surrounding the relevant guideline and its amendment fail to make clear that the amendment's purpose was merely to clarify rather than to alter pre-existing law, we will confer no weight on the subsequent amendment"). We conclude that the 1991 amendment to section 5G1.3 did not retroactively invalidate the consecutive sentence imposed on Fagan.

This conclusion does not end our inquiry, however. Judge Pfaelzer decided to impose a consecutive sentence in light of Fagan's conviction in Case II on three counts, and in light of the sentence that Judge Tevrizian had then imposed. Because we now vacate that sentence and remand for Judge Tevrizian to reconsider the plea agreement and resentence Fagan, we conclude that Judge Pfaelzer also must be given the opportunity to resentence him. This procedure will allow Judge Pfaelzer to determine whether to impose a concurrent or consecutive sentence in light of the sentence and the counts of conviction that exist after Judge Tevrizian renders his decision on remand. Moreover, this remedy most nearly restores Fagan to the position in which he would have been but for the government's breach of the plea agreement.

 Finally, we point out again that section 5G1.3 of the Sentencing Guidelines has been amended once more, effective November 1, 1992. U.S.S.G. § 5G1.3 (Nov. 1992) (as amended by U.S.S.G. app. C, amend. 465 (Nov. 1992)). It is well-settled that, when sentencing a defendant, the district court must apply the version of the Sentencing Guidelines in effect on the date of sentencing. *Mooneyham,* 938 F.2d at 140. Several other circuits have stated the corollary to this rule: upon remand for resentencing, a district

court must apply the version of the Sentencing Guidelines in effect on the date of resentencing. *Gross,* 979 F.2d at 1052 (explicitly addressing resentencing); *United States v. Bermudez,* 974 F.2d 12, 14 (2d Cir.1992) (same); *United States v. Edgar,* 971 F.2d 89, 93 n. 4 (8th Cir.1992) (same); *United States v. Kopp,* 951 F.2d 521, 534 (3d Cir.1991) (same). These circuits have created an exception to this general rule for cases in which application of a later version of the Sentencing Guidelines would create an *ex post facto* problem. *Gross,* 979 F.2d at 1052–53 (instructing the district court to apply on remand an earlier version of the Sentencing Guidelines because application of the amended version could result in a harsher sentence); *Edgar,* 971 F.2d at 93 n. 4 ("[o]nly when the retroactivity of a guidelines' change results in a harsher penalty, and thus an *ex post facto* problem arises, is the district court required to apply the earlier version"); *Kopp,* 951 F.2d at 534 ("those amendments not posing ex post facto problems will be in effect at resentencing"). We agree with these decisions and hold that, absent an *ex post facto* problem, the district court must apply the version of the Sentencing Guidelines in effect on the date of resentencing. Because the more favorable 1991 amendment never applied to Fagan, there is no *ex post facto* problem in resentencing him under the current provision, which is less harsh than the version under which he was originally sentenced.

## III. CONCLUSION

We vacate the sentence imposed in the case before Judge Pfaelzer and remand for resentencing (No. 90–50172). We vacate the sentence imposed in the case before Judge Tevrizian and remand for reconsideration of the plea agreement and resentencing (Nos. 88–5439 & 89–50549).

**Nos. 88–5439 and 89–50549 SENTENCE VACATED AND REMANDED FOR RECONSIDERATION OF PLEA AGREEMENT AND RESENTENCING; No. 90–50172 SENTENCE VACATED AND REMANDED FOR RESENTENCING.**