12 F.3d 1110
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff, Appellee,
v.
Jerry Allen THOMPSON, Defendant, Appellant.
 No. 93-50082.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 1, 1993.
Decided Nov. 17, 1993.
 
 Before: FLETCHER, NORRIS, and PREGERSON, Circuit Judges.
 MEMORANDUM*
 Jerry Allen Thompson was convicted on his plea of guilty to three counts of unauthorized use of access devices in violation of 18 U.S.C. Sec. 1029(a)(2) (fraudulent use of credit card numbers). Thompson pled guilty pursuant to a plea agreement with the U.S. Attorney. While Thompson awaited sentencing he used a jail telephone to continue his wire fraud activities. Based in part on Thompson's conduct after his conviction, the district court imposed a sentence of 37 months under Sec. 2F1.1 of the United States Sentencing Guidelines. Thompson now appeals the district court's denial of a two-point downward adjustment in sentencing for acceptance of responsibility under U.S.S.G. Sec. 3E1.1, and its imposition of a two-point upward adjustment for obstruction of justice under U.S.S.G. Sec. 3C1.1. We affirm.
 
 I. BACKGROUND
 A. Factual Background
 
 1
 Thompson and the U.S. Attorney stipulated to the following facts. Between September 18, 1991 and January 13, 1992, Thompson used other people's credit card numbers without authorization to order $24,680 in gold coins from a Pennsylvania company. The company shipped the coins by Federal Express to Thompson's address in Los Angeles, or to the Hawthorne office of Federal Express for pickup. On February 3, 1992, Thompson placed an order with the coin company from a telephone at the Los Angeles Hall of Justice, where he was detained on unrelated charges, and instructed his mother to accept delivery of the coins and hold them for him. United States Secret Service agents arrested Thompson's mother when she received the coins. The agents then met with Thompson and advised him of his Miranda rights. Thompson waived his rights and admitted to using several credit card numbers without authorization to order coins.
 
 B. Procedural History
 
 2
 On July 31, 1992, a federal grand jury indicted Thompson on three counts of unauthorized use of access devices in violation of 18 U.S.C. Sec. 1029(a)(2). On August 3, 1992, Thompson entered a plea of not guilty. Then, on September 22, 1992, after entering into a plea agreement, Thompson changed his plea to guilty. One provision of the plea agreement was that the U.S. Attorney would recommend a two-point downward departure for Thompson's acceptance of responsibility for his crimes, provided Thompson demonstrated such acceptance "up to and including the time of sentencing." Plea Agreement p. 3, p 5.
 
 
 3
 At an October 15, 1992 presentence interview, Thompson admitted to the U.S. Probation Department that he committed the charged crimes, and provided details about his methods. He admitted that he sold the coins to raise cash to live on, conceded that he had been convicted of a similar offense in 1990, and told the probation officer he worried that mental illness compelled him to commit his crimes. A psychiatric exam conducted before sentencing indicated that Thompson suffered from a manic-depressive illness, which was exacerbated by alcohol abuse and which created a compulsion to engage in impulsive activities with a high potential for self-destructive consequences. In its Presentence Report dated November 18, 1992, the Probation Department recommended a two-point downward adjustment in sentencing level under U.S.S.G. Sec. 3E1.1 because Thompson had admitted to committing the crimes and had given an accurate account of his activities.
 
 
 4
 On November 25, 1992, the U.S. Attorney informed the Probation Department by letter that while Thompson was awaiting sentencing he had used Metropolitan Detention Center telephones to fraudulently order some $5,300 in merchandise on at least nineteen different credit cards.[1] The government urged that Thompson not receive the two-point downward adjustment under Sec. 3E1.1, and that his base offense level be elevated.
 
 
 5
 On December 7, 1992 the probation department filed an addendum to the Presentence Report, which now recommended against the downward adjustment under Sec. 3E1.1 and urged a two-point upward adjustment for obstruction of justice under U.S.S.G. Sec. 3C1.1.
 
 
 6
 On January 25, 1993, the district court conducted a sentencing hearing. At the hearing, the court concluded that Thompson was not entitled to a downward reduction for acceptance of responsibility because his continued use of credit cards showed a lack of remorse. The court noted that the Guidelines application notes directed the court to consider post-offense rehabilitation efforts in determining acceptance of responsibility. U.S.S.G. Sec. 3E1.1, comment (n. 1(g)). The court also concluded that Thompson had obstructed justice under Sec. 3C1.1 of the Guidelines and United States v. Lofton, 905 F.2d 1315 (9th Cir.), cert. denied, 498 U.S. 948 (1990).
 
 
 7
 Applying U.S.S.G. Sec. 2F1.1, the court calculated a total offense level of 14 with a criminal history category of V. The resulting Guideline range is 33-41 months. The district court, reasoning that the offense level had already been increased for all relevant aggravating factors, imposed a sentence at the midpoint of the guidelines range, 37 months.
 
 
 8
 Thompson now appeals, asserting: (1) the district court erred by denying him a two-point downward adjustment in offense level under U.S.S.G. Sec. 3E11.; (2) the district court erred by imposing a two-point upward adjustment in offense level for obstruction of justice under U.S.S.G. Sec. 3C1.1.
 
 II. DISCUSSION
 A. Acceptance of Responsibility
 
 9
 We review application of the Sentencing Guidelines de novo. United States v. Fagan, 996 F.2d 1009, 1017 (9th Cir.1993). However, whether a defendant has accepted responsibility is a factual determination reviewed for clear error. United States v. Martinez-Gonzalez, 962 F.2d 874, 878 (9th Cir.1992). We give great deference to the district court's determination that a defendant did or did not accept responsibility, and will not disturb that determination unless it is without foundation. United States v. Smith, 905 F.2d 1296, 1301 (9th Cir.1990).
 
 
 10
 The district court may properly conclude that a defendant has not accepted responsibility if he continues a course of criminal conduct after entering a guilty plea but before sentencing. United States v. Piper, 918 F.2d 839, 841 (9th Cir.1990); Lofton, 905 F.2d at 1317.
 
 
 11
 The defendant in Lofton, who had been convicted of wire fraud, continued to commit wire fraud over prison telephones while awaiting sentencing, providing false statements to the probation officer who was attempting to determine the scope of Lofton's criminal activity. We upheld a district court determination that Lofton's actions precluded a finding of acceptance of responsibility under Sec. 3E1.1. Lofton, 905 F.2d at 1317.
 
 
 12
 The facts in Lofton appear almost identical to the present case. However, Thompson argues that in contrast to Lofton, who lied to his probation officer at the presentence conference, Thompson was completely candid with his probation officer and did not resume committing wire fraud until after the conference.
 
 
 13
 The record is not clear as to when Thompson resumed making fraudulent credit card charges, but the undisputed fact that Thompson made his calls during the period between conviction and sentencing is sufficient for our analysis. In finding that Lofton did not accept responsibility, the court did not consider just Lofton's lying to the probation department. It also made the overall observation that his continued course of criminal conduct spoke louder than words to negate a showing of contrition. Lofton at 1317. In the present case, the district court similarly found that Thompson's continued course of criminal conduct made a poor showing of remorse and demonstrated a failure to take measures toward rehabilitation under application note 1(g) to Sec. 3E1.1. The district court's finding that Thompson's continued fraud demonstrated a failure to appreciate the wrongfulness of his actions and a lack of serious effort to rehabilitate himself provided a sound foundation for denying credit for acceptance of responsibility.
 
 B. Obstruction of Justice
 
 14
 When a defendant fails to object to a presentence report's recommendation of an upward adjustment for obstruction of justice under U.S.S.G. Sec. 3C1.1, he waives the right to challenge the increase in sentence on appeal. United States v. Visman, 919 F.2d 1390, 1394 (9th Cir.1990), cert. denied, 112 S.Ct. 442 (1991). At the sentencing hearing, Thompson made only this response to the report's recommendation of an upward adjustment for obstruction of justice:
 
 
 15
 Your Honor, with respect to obstruction of justice, we would be willing to concede, Your Honor, that Mr. Thompson's conduct following the presentence interview may warrant the Court in imposing a two-level enhancement for obstruction.
 
 
 16
 R.T. of Sentencing at p. 5. The law of this circuit unequivocably bars Thompson from raising this issue for the first time on appeal. We therefore do not reach the merits of Thompson's claim.
 
 III. CONCLUSION
 
 17
 The district court did not err when it denied Thompson a two-point downward adjustment for acceptance of responsibility under U.S.S.G. Sec. 3E1.1 because his continued course of criminal conduct showed a failure to make efforts to rehabilitate. Thompson waived his right to appeal a two-point upward adjustment under U.S.S.G. Sec. 3C1.1 when he failed to object to the recommendation of the Presentence Report.
 
 
 18
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 According to the government, the calls took place in August, September and October of 1992, both before and after Thompson had his presentence meeting with the probation officer. Because at the sentencing hearing Thompson did not contest the government's account of his post-conviction credit card orders, the account never became a part of the trial record. Thompson's argument on appeal rests on an assertion that he did not make further credit card orders between the time of his indictment and his meeting with the parole officer. Therefore, he argues, he was candid about the scope of his fraud at the time of meeting with the probation officer, and only later resumed his criminal activity