39 F.3d 1188
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Norman BROWN, Defendant-Appellant.
 No. 93-30279.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Sept. 15, 1994.
Decided Oct. 26, 1994.
 
 1
 Before: THOMPSON and TROTT, Circuit Judges, and TASHIMA, District Judge.*
 
 
 2
 MEMORANDUM**
 
 
 3
 Defendant was convicted of distribution of a substance containing cocaine base. We have jurisdiction over this appeal under 28 U.S.C. Sec. 1291, and we affirm.
 
 FACTS
 
 4
 Scott Tredwell was a paid citizen informant working with the Oregon State Police Youth Gang Strike Task Force. Tredwell informed Detective Foster that a person known as "Too-Live" was willing to sell him crack cocaine. Through photographs and an address comparison, "Too-Live" was determined to be defendant Norman Brown.
 
 
 5
 Tredwell arranged to purchase one-half ounce of crack from the defendant. In the presence of Officers Foster and Urban, Tredwell arranged to meet the defendant at a Burger King restaurant. The officers equipped Tredwell with a transmitter in order to tape his contact with the defendant, and gave Tredwell $500 in cash--the going rate for one-half ounce of crack.
 
 
 6
 The officers followed Tredwell to the Burger King parking lot and observed his actions from their parked car across the street. A white car, which Tredwell recognized as belonging to the defendant, entered the parking lot and the driver got out and spoke to Tredwell.
 
 
 7
 Detective Foster testified that he saw a person of generally the same shape and size as defendant, but that he did not get a look at the person's face and could not positively identify the person as the defendant. Officer Urban testified that she "saw the profile and the back of his head and the shape of his body, and ... felt it was Norman Brown." Although Officer Urban did not see the person's face, she had testified earlier that she had a number of prior contacts with Brown.
 
 
 8
 The officers were able to monitor only a part of the conversation between Tredwell and the driver of the white car. The officers observed the person they believed to be Brown return to the white car and leave the parking lot. However, they did not get a look at the driver's face.
 
 
 9
 Tredwell followed the white car, and the officers followed Tredwell until the cars stopped five blocks away from the Burger King. The officers parked about one block away from Tredwell and the white car. The driver got out of the white car, went to Tredwell's car, gave Tredwell the crack, and received $500 from Tredwell. After the driver left, the officers met with Tredwell, who gave them 9.80 grams of a substance containing cocaine base. The officers later checked the license plate of the white car and determined that it belonged to Katherine Lockstead. Lockstead told them that she had given the car to "Too-Live."
 
 PROCEEDINGS BELOW
 
 10
 Defendant Brown was indicted on two counts of distributing a substance containing cocaine base. At his first trial, defendant was found not guilty of Count One, but the jury deadlocked on Count Two. At the retrial, defendant was convicted of Count Two.
 
 APPELLANT'S CONTENTIONS
 
 11
 Appellant contends that the district court abused its discretion by denying his motions for mistrial. Appellant also contends that allowing the testimony of Detective Foster as to the reliability of Tredwell was reversible error.
 
 DISCUSSION
 A. Motions for Mistrial
 
 12
 We review the denial of a motion for mistrial for abuse of discretion. United States v. Homick, 964 F.2d 899, 906 (9th Cir.1992); United States v. Segal, 852 F.2d 1152, 1155 (9th Cir.1988). Under this standard, a reviewing court cannot reverse unless it has a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors. United States v. Plainbull, 957 F.2d 724, 725 (9th Cir.1992).
 
 1. Urban's Testimony
 
 13
 Defendant first asserts that the trial court erred in admitting Officer Urban's testimony regarding her past contacts with the defendant. Urban testified that she had contact with the defendant more than five times prior to these events. Defendant contends that Urban's testimony would tend to lead a jury to believe that the defendant was involved in prior illegal conduct.
 
 
 14
 Urban's testimony was probative of her ability to recognize and identify the defendant from a distance. See United States v. Fagan, 996 F.2d 1009, 1015 (9th Cir.1993) (allowing testimony by officer that, "I can identify [defendant]. Sure. I have seen him. I have come into contact with him several times. He's a gang member. I work gangs."). Here, Urban's testimony was not nearly as prejudicial as that of the officer in Fagan who made a direct reference to the defendant's gang activities. Id. The district court did not abuse its discretion in allowing this testimony. See United States v. Kinslow, 860 F.2d 963, 968 (9th Cir.1988), cert. denied, 493 U.S. 829 (1989) (district judge has "wide latitude in determining the admissibility of evidence" under the "unfair prejudice" standard of Fed.R.Evid. 403).
 
 2. Lockstead's Testimony
 
 15
 Defendant next claims that the district court erred in permitting Katherine Lockstead to testify to numerous visits she made to defendant's home. Lockstead's testimony served two relevant purposes: first, to corroborate Tredwell's testimony that defendant was known as "Too-Live"; and, second, to establish that possession of the white car observed in the drug transaction had passed to defendant prior to the date of the crime. In the course of her testimony, Lockstead stated that she had visited the defendant's house two or three times per day, three or four times per week, for a period of three to four weeks.
 
 
 16
 Appellant moved for a mistrial under Fed.R.Evid. 609, based on Lockstead's testimony. Appellant now concedes that this objection was mistaken. However, he argues for the first time on appeal that Lockstead's testimony was "other act" evidence under Fed.R.Evid. 404(b). Since the district court never ruled on this 404(b) argument, we review for plain error. Cf. United States v. Newman, 6 F.3d 623, 629 (9th Cir.1993) (admission of evidence about prior contacts with police is reviewed for plain error if there is no contemporaneous objection); United States v. Guerrero, 756 F.2d 1342, 1347-48 (9th Cir.1984) (not abuse of discretion to deny motion for a mistrial which is based on allegedly improper evidence of defendant's past actions under 404(b) if defendant failed to object contemporaneously or to move to strike the testimony). Because this testimony was relevant and not prejudicial, we hold that the trial court did not err in denying defendant's motion for mistrial based on Lockstead's testimony; it was not plain error to admit it.
 
 3. Leading Questions
 
 17
 Defendant next contends that the district court erred in denying his motion for mistrial based on the prosecution's consistent use of leading, repetitive, and irrelevant questions. The district court's decision to allow the use of leading questions is also reviewed for an abuse of discretion. United States v. Castro-Romero, 964 F.2d 942, 943 (9th Cir.1992).
 
 
 18
 Although the district judge stated that the prosecutor was "one of the most consistent leaders of witnesses" that he had ever seen, the judge also noted that many of the questions were "harmless" and "insignificant." The court also instructed the jury as to the proper role of objections, and stated that any request by the defendant for another instruction at the end of the trial would be granted.
 
 
 19
 Appellant argues that, although his objections were sustained for the most part, the mere fact that he frequently had to object prejudiced the his right to a fair trial. Defendant suggests that the likely inference to be drawn by the jury from frequent objections was that the defendant was trying to conceal information from it.
 
 
 20
 As the government argues, five objections in two days, to which defendant refers, are hardly likely to influence the jury to convict, thus denying the defendant's right to a fair trial. The trial court sustained defendant's objections to improper questions and instructed the jury regarding the proper weight to be given to objections. The district court did not abuse its discretion in denying defendant's motion for mistrial based on the prosecutor's use of leading questions.
 
 B. Vouching
 
 21
 Finally, defendant argues that Detective Foster was impermissibly allowed to testify to the reliability, honesty, and integrity of the informant. Defendant correctly asserts that the government may not bolster the credibility of its witness in advance. United States v. Lefevour, 798 F.2d 977, 983 (7th Cir.1986). Under Fed.R.Evid. 608(a)(2), evidence of credibility is admissible only after the character of the witness for truthfulness has been attacked. The district court's construction of the Federal Rules of Evidence is a question of law subject to de novo review. United States v. Cuozzo, 962 F.2d 945, 947 (9th Cir.1992).
 
 
 22
 On cross-examination of Detective Foster, defendant asked whether any precautionary measures were taken to insure that the informant was not in possession of undisclosed drugs or money immediately before or after the controlled buy in question. Foster responded that the informant was periodically searched before and after controlled buys; however, the informant was not searched in this instance. Defendant then, referring to the DEA's policy of performing informant searches, stated, "Now, isn't it fair to say that a policy like that, it would keep the undercover agent or informant honest as far as pocketing [drugs or money from a buy]...."
 
 
 23
 On redirect, the prosecution asked Detective Foster why the informant was not searched on this occasion. Detective Foster replied that he had not searched the informant because he had complete confidence in the informant. Defendant objected, but was overruled. The prosecution then again asked Detective Foster why the informant was not searched. Foster responded, "Because Mr. Tredwell was not a typical informant. He was a police agent. I had complete confidence in his honesty and integrity."
 
 
 24
 Defendant argues that Detective Foster's testimony was impermissible in that it bolstered the credibility of the informant in the absence of the defendant attacking it. He contends that his cross-examination was not an attack on the credibility of Tredwell or Foster, but was an examination of the precautions used by the government prior to, during, and after, the controlled buy at issue in this case.
 
 
 25
 However, a fair reading of defendant's cross-examination is that the credibility of Detective Foster and Tredwell was attacked when defendant asked Foster about the normal procedures for ensuring that an informant did not possess drugs prior to a controlled buy and asked whether Tredwell was in fact searched prior to the controlled buy. This line of questioning clearly implied that Tredwell could have possessed drugs prior to the buy, thus, placing the credibility of Tredwell in question. In addition, Detective Foster's response on cross-examination that he did not search the informant prior to the control buy naturally led the prosecution to ask why the informant was not searched. This is a classic case of "opening the door" on cross-examination.
 
 
 26
 Defendant argues that the testimony of Detective Foster was impermissible "vouching" for the honesty of the informant. Vouching is defined as "placing the prestige of the government behind a witness through personal assurances of the witness's veracity, or suggesting that information not presented to the jury supports the witness's testimony." United States v. Necoechea, 986 F.2d 1273, 1276 (9th Cir.1993).
 
 
 27
 Detective Foster's testimony was not impermissible vouching for the informant. Foster was not placing the prestige of the government behind the informant, since he only testified that he did not search Tredwell on the one occasion because he trusted the informant. This does not rise to the level of vouching, such as when the prosecutor ensures the jury that a witness is telling the truth. See id. at 1277-78.
 
 
 28
 Even if, however, we were persuaded that Foster's statements constituted vouching, this is not entirely dispositive. Under Necoechea, there is no bright line rule as to when vouching would result in reversal; the court should consider: (1) the form of vouching; (2) how much the vouching implies that the prosecutor has extra-record knowledge of or the capacity to monitor the witness's truthfulness; (3) any inference that the court is monitoring the witness's veracity; (4) the degree of personal opinion asserted; (5) the timing of the vouching; (6) the extent to which the witness's credibility was attacked; (7) the specificity and timing of a curative instruction; (8) the importance of the witness's testimony; and (9) the importance of the vouching to the case overall. Id. at 1278.
 
 
 29
 Applying these factors, we find the following: (1) The vouching occurred in the form of Detective Foster explaining why he did not search the informant for drugs before the one controlled buy took place. (2) The vouching did not imply that either Detective Foster or the prosecutor had special or extra-record knowledge of the informant's truthfulness. The prosecutor did not reveal his opinion as to the credibility of the informant. In addition, Foster's statement that he trusted the informant was merely an explanation as to why he did not search Tredwell, and did not imply that he had special knowledge about the informant's truthfulness. (3) There were no inferences made as to whether the court was or was not monitoring the witness' veracity. (4) The degree of personal opinion was limited to the opinion of Foster in making his decision not to search Tredwell before the controlled buy took place. (5) Although the vouching did occur before the actual testimony of Tredwell, the prosecutor was trying to reestablish the credibility of both Detective Foster and Tredwell on re-direct after their credibility was questioned on cross-examination of Foster. Therefore, the timing of the prosecutor's questioning of Detective Foster regarding why he did not conduct a search of Tredwell prior to the controlled buy was not aberrant. (6) The extent of the attack on the witness's credibility was in direct proportion to the vouching that occurred. Defendant asked if Detective Foster searched the informant prior to the controlled buy, implying that this would have ensured the integrity of the informant. On redirect, the prosecution then asked Foster why he did not search the informant, so that Foster might respond to the implication directly made by defendant. Therefore, Foster's statement was a proper explanatory response to an issue opened by defendant. (7) There is no indication that curative instructions were given to the jury either at the time of the vouching nor during the jury instructions. (8) Detective Foster's testimony was important due to his observations of the controlled buy. Foster's testimony was not offered solely for the purposes of vouching for the informant. However, the credibility of the informant was a central issue in this case since Tredwell was the only one who could identify defendant as the person who sold him the crack. (9) Although the credibility of Tredwell was important to the case, Detective Foster's vouching for the credibility of Tredwell was not that important. In fact, the prosecution did not even ask Foster any questions regarding the credibility of the informant until after the credibility of both the informant and Foster was attacked by the defense. In addition, the jury had the opportunity to determine the credibility of the informant through the informant's own testimony, since Tredwell testified at the trial.
 
 
 30
 Therefore, the district court did not err in allowing the testimony of Detective Foster to stand. The prosecution was merely responding to an issue that was brought up by the defense which attacked the credibility of both the officer and the informant.
 
 
 31
 AFFIRMED.
 
 
 
 *
 Hon. A. Wallace Tashima, United States District Judge for the Central District of California, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by the Ninth Circuit Rule 36-3