UNITED STATES of America, Appellee,

v.

Michael Joe OLESEN, Appellant.

UNITED STATES of America, Appellee,

v.

Michael Gene LANDON, Appellant.

Nos. 90–1430SI, 90–1025SI.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 12, 1990.

Decided Dec. 4, 1990.

David R. Stickman, Omaha, Neb., for appellant Landon.

Robert Kromminga, Des Moines, Iowa, for appellant Olesen.

Ronald M. Kayser, Des Moines, Iowa, for appellee.

Before WOLLMAN, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and MAGILL, Circuit Judge.

MAGILL, Circuit Judge.

Michael Gene Landon and Michael Joe Olesen pleaded guilty to drug and related charges arising from the same indictment. Landon appeals the district court's amendment of his plea agreement with the government, arguing that the court did not have the authority to make any modifications. Olesen appeals the district court's two-point upward adjustment of his offense level, arguing that the district court erred in making factual determinations pursuant to the Federal Sentencing Guidelines § 3B1.1(c). We reverse the district court's modification of Landon's plea agreement, order a reinstatement of the original agreement and affirm the district court's upward adjustment of Olesen's offense level.

## I.

On January 19, 1989, the government filed a twenty-nine-count indictment naming Landon, Olesen and seven others. Landon was indicted on January 19, 1989; he entered into a plea agreement on September 6, 1989 in which he agreed to plead guilty to five of the original twenty-nine counts. The counts to which Landon pleaded guilty included possession with the intent to distribute approximately two pounds of cocaine; conspiracy to distribute cocaine; currency transaction violations; and money laundering violations. As part of the plea agreement, Landon agreed to cooperate with the authorities and forfeit all drug-related property he owned. The plea agreement was made pursuant to Rule 11(e)(1)(C) of the Federal Rules of Criminal Procedure. The agreement stipulated that Landon had a category I criminal history and that he had a combined offense level of 34. Therefore, according to the Sentencing Guidelines, the appropriate sentencing range was 151–188 months. The agreement also stipulated that "pursuant to Rule 11(e)(1)(C) that a term of imprisonment of *151 months* and no fine would be an appropriate disposition in this case." Brief for Appellant at Add. 11 (emphasis in original).

The district court unconditionally accepted the plea agreement on September 7, 1989, ordered a presentence report to be disclosed by October 20, 1989, and scheduled sentencing for December 28, 1989. The Presentence Investigation Report stated that Landon had a category II criminal history and recommended that the district court sentence Landon from 324 to 405 months. The government accused Landon of breaching the plea agreement by refusing to provide certain testimony and failing to turn over drug-related assets. Landon petitioned for a writ of mandamus to compel the district court to enforce the original plea agreement; the Eighth Circuit denied the writ of mandamus.

On February 14, 1990, the district court issued findings of fact and an order reforming the plea agreement. In its conclusions of law, the court denied Landon's request for specific performance of the original plea agreement and modified the term of imprisonment portion of the agreement to reflect a category II criminal history. This modification resulted in an increase of seventeen months in the term of imprisonment. The district court gave Landon eight days to decide whether he would accept the reformed agreement and informed him that failure to accept the

agreement would result in the court's rejection of his previous guilty plea and that the district court would then enter a not guilty plea and commence trial on March 9, 1990. On February 21, 1990, Landon accepted the court's reformed plea agreement.

Landon appeals the district court's modification of his plea agreement and seeks reinstatement of the original sentence of 151 months.

In Olesen's plea agreement, he pleaded guilty to one count of conspiracy to distribute cocaine. At Olesen's sentencing hearing, the district court found that Olesen deserved a two-point increase in his base offense level for his role as an organizer, leader, manager, or supervisor pursuant to Sentencing Guidelines § 3B1.1. In support of this decision, the district court found that Olesen set his own prices, decided whom he would sell to and how much he would sell. The district court also noted that the circumstances surrounding Olesen's offense required a considerable amount of organization and that based on the quantities of cocaine he sold one could reasonably conclude that other people would resell the cocaine they bought from Olesen. The district court concluded:

> [Olesen] supervised his own operation, managed his own operation and distributed to persons both for their own use and for further distribution. And that he was not directed and forced into such things, as pricing, by others. He could do that on his own.
>
> . . . .
>
> And in addition, the fact that although he is in an organizational role, which aggravates it, it is a relatively close question on that, which is to say it wasn't a major organizational role, even though a supervisory role it was.

Sentencing Transcript at 44–46. Olesen now argues that these findings are erroneous and the subsequent two-point increase was therefore improper.

## II.

### A. Michael Gene Landon

#### 1. Rule 11

█ Landon argues on appeal that the district court violated Rule 11 of the Federal Rules of Criminal Procedure when it modified a plea agreement after unconditional acceptance. Rule 11 specifically describes the appropriate procedure for accepting plea agreements. District courts are prohibited from participating in any plea-bargaining discussions. The rule states that when parties reach a plea agreement that defines a specific sentence as the appropriate disposition of the case, a district court may "accept or reject the agreement, or may defer its decision as to the acceptance or rejection until there has been an opportunity to consider the presentence report." Fed.R.Crim.P. 11(e)(2). Once a court has accepted an agreement, however, there is no provision in the rules that allows it to reject or modify the agreement. If the government or the court does not adhere to the terms of a plea agreement, a defendant has two remedies, namely, specific performance of the plea agreement or withdrawal of the plea. *United States v. Jefferies*, 908 F.2d 1520, 1526 (11th Cir.1990) (plea agreement that stipulates thirteen grams of cocaine in offense with governmental promise to make no attempt to influence court prohibits sentencing court from considering fifteen kilograms of cocaine mentioned in presentence report).

Appellate courts have consistently prohibited district courts from interfering in the plea bargaining process. In *United States v. Werker*, 535 F.2d 198 (2d Cir. 1976), a district court was about to intervene in the plea bargaining process and tell the defendant what sentence would be imposed if the defendant pleaded guilty. *Id.* at 201. The government sought and obtained a writ of mandamus to prevent the district court from revealing this information. *Id.* at 200. The Second Circuit held that Rule 11 unequivocally prohibited the judge from intervening in this way. *Id.* at 202.

In *United States v. Cruz*, 709 F.2d 111 (1st Cir.1983), the court unconditionally accepted a plea agreement whereby the defendant pleaded guilty to a misdemeanor

narcotics possession. Two months later the district court reversed itself and rejected the plea on the grounds that it was too lenient in light of the presentencing report. The First Circuit overruled the district court, saying "once the court accepted the agreement, thereby binding the defendant and prosecution, it could not simply change its mind based on information in the presentence report, at least where that information revealed less than fraud on the court." *Id.* at 114–15.

Courts have ruled, however, that there are circumstances where a district court may bypass the limits of Rule 11. In *United States v. Partida–Parra*, 859 F.2d 629 (9th Cir.1988), the court held that a district court may go beyond the bounds of Rule 11 when there is a fraud on the court. *Id.* at 632. The Ninth Circuit went on to distinguish factual mistakes from fraud: "We have found no authority that empowers the court to abrogate a plea agreement to relieve one party of its own mistake." *Id.* at 633. In this case, however, neither the government nor the court argues fraud, so the exception is not available.

■ Applying the reasoning of *Jefferies*, *Werker*, *Cruz*, and *Partida–Parra*, we hold that Rule 11 does not authorize a district court to intervene in the plea agreement process absent a showing of fraud.

### 2. Contract Law Analogy

To support the court's reformation of the plea agreement, the government relies on contract law doctrines. This comparison is not novel. Other courts have compared accepted plea agreements to contracts.[1] In *United States v. Weaver*, 905 F.2d 1466 (11th Cir.1990), the court applied contract principles to a government letter granting immunity to a criminal defendant. In re-sponding to the defendant's claim that there was a mutual mistake in the "contract," the court said:

> [R]eformation of a written agreement is warranted only when the evidence demonstrates that the parties' mutual mistake resulted in a written document which does not accurately reflect the terms of their agreement. Consequently, reformation is generally, without more, not an available remedy where the evidence demonstrates mistake or change of mind of only one of the contracting parties.

*Id.* at 1472 (citations omitted). Applying this principle to Landon's plea agreement, there was no mistake in Landon's mind about the term of imprisonment. Landon is further justified in relying upon the specific time period in the plea agreement because the government had the Rule 11(e)(1)(B) option of agreeing to recommend a specific sentence; instead, the government chose to promise a specific term of imprisonment pursuant to Rule 11(e)(1)(C).

■ Plea agreements are *like* contracts; however, they are not contracts, and therefore contract doctrines do not always apply to them. *United States v. Zweber*, 913 F.2d 705, 711 (9th Cir.1990). In *Zweber*, the defendants pleaded guilty to possessing cocaine with intent to distribute. Pursuant to the plea agreement, the government agreed to recommend certain reductions to decrease their sentences. *Id.* at 707. At sentencing, the court granted no reductions or downward departures and denied the defendants' subsequent motion to withdraw their guilty pleas. *Id.* On appeal, the defendants argued that the plea agreement was void because both parties to the agreement were mutually mistaken about

---

1. *See United States v. Mandell*, 905 F.2d 970, 973 (6th Cir.1990); *United States v. Vogt*, 901 F.2d 100, 102 (8th Cir.1990); *United States v. Arnett*, 628 F.2d 1162, 1164 (9th Cir.1979); *see also Santobello v. New York*, 404 U.S. 257, 262, 92 S.Ct. 495, 498–99, 30 L.Ed.2d 427 (1971) (when plea significantly rests on prosecutor's promise, promise is part of consideration). Using this approach, courts look to the reasonable beliefs of defendants at the time a plea is entered to determine whether a plea agreement has been breached. *Mandell*, 905 F.2d at 973. In this case, there is no question that Landon thought he was agreeing to a sentence of 151 months. Therefore, any reformation of Landon's plea agreement that changed the period of imprisonment would be a breach of the agreement. The remedy for such a breach is either specific performance of the original agreement or a withdrawal of the plea. *Id.; see also Santobello*, 404 U.S. at 262–63, 92 S.Ct. at 498–99.

the law governing the Guidelines. *Id.* at 711. In rejecting this argument, the Ninth Circuit said that "[t]he fact that the mistake in this case was mutual does not support the defendant's claim.... Analogies to contract law in this setting are not perfect." *Id.*

This court has also acknowledged the inherent limits of the contract analogy. In *United States v. Vogt*, 901 F.2d 100 (8th Cir.1990), we applied contract principles to decide that the government waived its right to complain of the defendant's breach by waiting ten weeks before seeking to vacate the plea agreement. *Vogt*, 901 F.2d at 102. After applying the *Restatement (Second) of Contracts*, we noted that " 'contract principles provide a *useful means by which to analyze* the enforceability of plea agreements.' " *Id.* (emphasis added) (quoting *United States v. Vogt*, No. Cr. 88–39, Order at 2 (N.D.Iowa July 12, 1989)).

In *United States v. Pelletier*, 898 F.2d 297 (2d Cir.1990), the government used immunized testimony in arguing that the defendants' false testimony resulted in a breach of the agreement that granted their immunity. *Id.* at 301. Although the court recognized the strong influence of contract law principles on such agreements, it held that due process requires "that [the] government adhere to the terms of any plea bargain or immunity agreement it makes." *Id.* The court rejected the government's breach of contract argument stating that due process required a deviation from normal commercial contract law. *Id.* at 302.

In *Partida–Parra*, the Ninth Circuit specifically refused to apply the contract doctrine of mutual mistake to plea agreements. 859 F.2d at 634. Recognizing the limitation of the plea agreement/contract analogy, the court held that district courts could not "revisit an accepted plea to consider whether [a] 'contract' was formed (as distinct from considering whether it was breached)." *Id.*

When the district court told Landon that it would not have accepted the guilty plea had it known of the mistaken criminal history classification, it was attempting to "revisit" the original plea agreement because of a mutual mistake. Even though the contract law analogy may seem to invite such revisitations, they are simply not allowed.

### 3. Judicial Objectivity

The need to preserve judicial objectivity also militates against allowing district courts to modify plea agreements. Judicial involvement in plea negotiations could lead a defendant to believe that refusal of a court-supported plea offer would result in an unfair trial. The risk of not going along with the disposition that a judge apparently desires might lead a defendant to plead guilty even if innocent. Judicial involvement in the process also makes it more difficult for the judge to determine whether a plea was entered voluntarily. Furthermore, the unequal bargaining power of the judge and the accused raises obvious questions of fundamental fairness. The court is supposed to be an objective arbiter between the government and the individual. Participation in the plea bargaining process endangers the court's objectivity and thus could further undermine the criminal justice system.[2]

The government argues that even if the original plea agreement was breached, Landon accepted a subsequent agreement that cured the breach. In support of this argument, the government cites *United States v. Holman*, 728 F.2d 809 (6th Cir.1984), where the district court had unconditionally accepted a Rule 11(e)(1)(C) plea agreement. *Id.* at 811. Upon reading the presentence report, the district court decided to reject the plea agreement and give the defendant an opportunity to withdraw his plea. *Id.* The defendant withdrew his plea, and his subsequent motion to have the original plea

---

**2.** Some state jurisdictions disagree with this proposition. They believe that judicial involvement in the plea bargaining process increases the efficiency of the criminal justice system. *See* Ill.Rev.Stat.1973, ch. 110A, § 402(d)(1) (al-

lowing judicial participation in plea discussions disclosed in open court). This view is clearly contrary to the federal rules that prohibit such involvement.

reinstated was denied. *Id.* The defendant then entered into a new plea agreement, which the court accepted. *Id.* The Sixth Circuit held that even though the district court improperly rejected the original plea agreement, the defendant's second plea agreement was made with "a full understanding of the possible consequences [and therefore] cured any prejudice possible from the first proceeding." *Id.* at 813.

Although Landon did enter into a second plea agreement after the district court rejected the original agreement, the circumstances were significantly different. Because the second plea agreement was the result of the district court's improper reformation of the original plea agreement, the second plea agreement does not cure the problems of the original plea agreement. If the district court had merely rejected the agreement and allowed the parties to renegotiate, this court could have affirmed the sentence based on the subsequent plea agreement. When the district court modified the original plea agreement in its conclusions of law on February 14, 1990, it violated Rule 11. Furthermore, by telling Landon that he had eight days to make up his mind and that the district court would not accept Landon's former plea, the district court became even more of an advocate for its proposed reformation. Rule 11's absolute prohibition against judicial involvement in plea bargaining is specifically designed to prevent this loss of objectivity.

Therefore, since the district court did not have the authority under Rule 11 or under any of the relevant contract theories to modify Landon's original plea agreement, we reverse the district court and remand for reinstatement of the original plea agreement.

## B.  Michael Joe Olesen

Olesen argues on appeal that the district court improperly increased his criminal offense level by two points after finding he was an organizer, leader, manager or supervisor. This court reviews district court factual determinations pursuant to Sentencing Guidelines § 3B1.1 under a clearly erroneous standard. 18 U.S.C.

§ 3742(e)(4); *United States v. Hoelscher,* 914 F.2d 1527, 1544 (8th Cir.1990). Application Note 3 to § 3B1.1 states:

> Factors the court should consider include the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

U.S.S.G. § 3B1.1, comment. (n. 3) (Nov. 1990). In *United States v. Streeter,* 907 F.2d 781 (8th Cir.1990), this court held that it was not clearly erroneous for the district court to find a leadership role when the defendant had exclusive control over the marijuana plants and other persons participated in the cultivation of the plants. *Id.* at 792. Here, the district court found that Olesen controlled both the pricing and distribution of cocaine and that his profits indicated he performed an aggravating role in a large conspiracy. Furthermore, the district court found that the amount Olesen sold to individuals made it reasonable to conclude that some of his buyers were reselling the cocaine they purchased from him. That not every reasonable person would necessarily reach the same conclusion is irrelevant. The district court's explanation of its conclusion is not clearly erroneous, and we therefore affirm.

## III.

For the foregoing reasons, we reverse the district court's reformation of Landon's plea agreement and remand for specific performance of the original agreement. We affirm the district court's two-point increase in Olesen's sentence for his role as leader/manager/supervisor.