**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Ronald G. RITSEMA, Defendant–Appellant.**

**No. 95–1304.**

United States Court of Appeals, Seventh Circuit.

Argued Sept. 18, 1995.

Decided July 11, 1996.

Timothy O'Shea (argued), Office of the United States Atty., Madison, WI, for Plaintiff–Appellee.

Steven P. Means, Amy O. Bruchs (argued), Michael, Best & Friedrich, Madison, WI, for Defendant–Appellant.

Before FLAUM, KANNE and ROVNER, Circuit Judges.

ILANA DIAMOND ROVNER, Circuit Judge.

This case comes to us on appeal for the second time. A two-count indictment charged Ronald Ritsema with possessing a firearm after having previously been convicted of a felony and with the possession of unregistered silencers. Ritsema agreed to plead guilty to the second charge. The district court accepted the plea and sentenced Ritsema to a prison term of 120 months, the high end of the guideline range as the court had calculated it. Ritsema appealed, and we vacated his sentence, concluding that the dis-

trict court had improperly referenced certain conduct unrelated to the silencer charge in applying the Sentencing Guidelines. *United States v. Ritsema,* 31 F.3d 559 (7th Cir.1994) (*"Ritsema I"*). On remand for resentencing, the district court announced that it had erred in accepting the plea agreement. Over Ritsema's objection, the court ordered the firearm possession charge reinstated and conducted a trial on that charge of the indictment. A jury found Ritsema guilty, and the court subsequently sentenced him to a prison term of 121 months. Ritsema again appeals, arguing that the district court lacked authority on remand to withdraw its approval of the plea agreement. We agree and consequently vacate his conviction and order enforcement of the plea agreement.

## I.

The facts underlying the charges against Ritsema were set out fully in *Ritsema I,* and we shall assume the reader's familiarity with that opinion. We will undertake a summary of only a few pertinent facts, with emphasis upon the unusual procedural history.

In the summer of 1991, the family of four-teen year-old K.J.L., who is mentally handicapped, moved next door to sixty-two year-old Ronald Ritsema. Soon thereafter, Ritsema began to abuse K.J.L. sexually. The abuse culminated in a sexual assault on September 8, 1991, which K.J.L. reported to the Janesville, Wisconsin police on the following day. The police obtained and executed a search warrant for Ritsema's trailer and, among other things, discovered several weapons, including two rifles equipped with home-made silencers.

State prosecutors charged Ritsema with the possession of firearms by a felon and sexual assault on a child. The firearms charge was referred to the federal authorities, and Ritsema pled guilty to sexual contact with a person under the age of sixteen. Shortly after this plea, K.J.L. revealed that after sexually assaulting her on the day before she went to the police, Ritsema had shown her one of the guns equipped with a silencer and warned her that if she told anyone, "a lot of people will get hurt." On

September 14, 1992, the state court sentenced Ritsema to a prison term of ten years.

On October 21, 1992, a federal grand jury returned an indictment charging Ritsema with the two weapons offenses. Count I alleged that Ritsema, having previously been convicted of a felony, had possessed firearms that had travelled in interstate commerce. *See* 18 U.S.C. § 922(g)(1). Count II alleged that Ritsema had possessed silencers that were not registered with the federal government. *See* 26 U.S.C. § 5861(d).

Ritsema and the government entered into a written plea agreement on January 27, 1993. Ritsema agreed to plead guilty to Count II of the indictment, the unregistered silencers charge, and the government agreed to dismiss Count I and recommend that Ritsema be given the maximum three-level reduction in his Guidelines offense level for acceptance of responsibility.

On February 3, Ritsema appeared before the court and offered his plea of guilty to Count II. Judge Shabaz accepted the plea and adjudged Ritsema guilty of the unregistered silencers charge, but withheld final acceptance of the plea agreement pending preparation of a presentence report by the Probation Office.

After the probation officer conducted a presentence investigation and prepared her report, Ritsema appeared before the court once again for sentencing. The presentence report disclosed that Ritsema had threatened K.J.L. with a firearm, and at the sentencing hearing, the Probation Officer gave testimony recounting her discussion of this incident with K.J.L. After hearing extensive argument from the parties as to how Ritsema's sentence should be calculated pursuant to the Sentencing Guidelines, Judge Shabaz stated that he accepted the plea agreement with one qualification:

> The Court accepts the plea agreement other than the recommendation for the 3-point reduction for acceptance of responsibility and finds the offense of conviction adequately represents the defendant's criminal conduct.

R. 39 at 45. The court then proceeded to determine the appropriate sentencing range

for Ritsema's conviction on the silencers charge using the 1990 Guidelines.

The sentencing range, as the district court calculated it, derived from a complex series of cross-references. The court looked first to section 2K2.1 of the 1990 Guidelines ("Unlawful Receipt, Possession or Transportation of Firearms or Ammunition"), which would have specified a base offense level of 18. However, section 2K2.1(c)(2) directs the court to Guidelines section 2X1.1 ("Attempt, Solicitation or Conspiracy") when the defendant "used or possessed the firearm in connection with commission ... of another offense." Here the district judge determined that Ritsema had used firearms equipped with silencers to intimidate K.J.L. into silence about the sexual abuse and thus to obstruct justice. Following 2X1.1(a)'s instruction to consult "the guideline for the substantive offense," the court thus looked to the guideline for obstruction of justice, section 2J1.2. When the defendant has "obstruct[ed] the investigation or prosecution of a criminal offense," section 2J1.2(c) directs the court to the guideline for an accessory after the fact, section 2X3.1. That guideline instructs the court to set the base offense level six levels below the base level for the underlying offense, here the offense that Ritsema had attempted to cover up—criminal sexual abuse. Section 2A3.1 specifies a minimum base offense level of 27 for that offense. However, pursuant to 2A3.1(b)(1), the court increased that level by four points, finding that Ritsema had accomplished the sexual abuse by displaying a dangerous weapon. It added an additional two points because the victim, K.J.L., was under the age of 16. § 2A3.1(b)(2). This yielded a base offense level of 33. In accord with section 2X3.1, the court decreased that by six points and assigned Ritsema a base offense level of 27. The court applied a two-point vulnerable victim enhancement (§ 3A1.1) given K.J.L.'s mental limitations. It also denied Ritsema a two-point reduction under section 3E1.1 for acceptance of responsibility, noting that Ritsema had attempted to obstruct justice, that he had denied threatening K.J.L. with a gun, and that he had not evinced acceptance of responsibility in a timely manner. The resulting adjusted offense level of 29, coupled with a criminal history category of II, called for a sentence of 97 to 121 months. The statutory offense to which Ritsema had pled guilty capped the sentence at ten years, however. Judge Shabaz sentenced Ritsema to that maximum term of 120 months, the sentence to run concurrently with the ten-year sentence imposed by the Wisconsin court for statutory rape.

Ritsema appealed, and we vacated his sentence. We concluded that the district court had erred in cross-referencing the obstruction of justice guideline pursuant to section 2K2.1(c), "because the act of threatening K.J.L. bore a too attenuated connection with the mere possession of silencers themselves" for one to say that Ritsema had possessed the silencers "in connection with" the obstruction of justice. 31 F.3d at 565. We noted that although a silencer was physically connected to the barrel of the rifle that Ritsema had used to threaten K.J.L., there was no evidence that Ritsema had used the silencer itself to threaten her or that she even knew the gun was equipped with a silencer. Id. "As the silencer alone cannot cause injury, nor does the device itself look like a weapon, we believe that under the facts of this case, the silencer could not have been used in connection with threatening K.J.L. to obstruct justice." Id. Nor were we persuaded that Ritsema's threats amounted to relevant conduct under section 1B1.3(a). Among other reasons, we noted that the possession of unregistered silencers and the obstruction of justice have different victims. Id. at 566. Moreover, the threats against K.J.L. were not a harm that resulted from the possession of the silencers, nor were they the object of the possession. Id. Finally, the threats were not issued either in preparation for the silencer possession, to avoid detection of it, or in furtherance of the possession. Id. We recognized that the threats against K.J.L. were contemporaneous with the silencer possession. Id. Nonetheless, we believed that a construction of section 1B1.3 under which temporal proximity alone was enough to make conduct relevant for sentencing purposes "would lead to untenable results, and twist in an unintended way the guidelines' attempt to introduce real-of-

fense principles through the Relevant Conduct provision." *Id.* We also found the vulnerable victim enhancement and the denial of a two-point reduction in the offense level for acceptance of responsibility to be improper. The vulnerable victim enhancement was erroneous because the possession of unregistered silencers is a victimless crime, and thus K.J.L. could not be considered a victim of the offense to which Ritsema had pled guilty. *Id.* at 568. Ritsema had not been given credit for accepting responsibility in part because he refused to admit that he had ever threatened K.J.L. Because we had concluded that the threats did not constitute relevant conduct for purposes of the guidelines, Ritsema was not required to accept responsibility for these actions and he therefore "may have qualified for a reduction." *Id.* We left that up to the district court.

On remand, when the parties appeared before the district court for resentencing, the court withdrew its prior acceptance of the plea agreement and reinstated Count I (the felon in possession of a firearm charge), which had been dismissed pursuant to that agreement. The court also granted Ritsema leave to withdraw his plea of guilty to Count II (the unregistered silencers charge). The court's reasons for withdrawing acceptance of the plea bargain were reflected in its subsequent order:

> At sentencing on April 1, 1993 the Court accepted the plea agreement, finding that the offense of conviction, Count II, adequately represented the defendant's criminal conduct. Upon its review of the decision vacating [Ritsema's] sentence this Court is of the opinion that it erred as a matter of law by accepting the plea agreement. Pursuant to § 6B1.2 of the sentencing guidelines, Standards for Acceptance of Plea Agreement, the Court may accept the plea agreement if it determines that the remaining charge adequately reflects the seriousness of the actual offense behavior and that accepting the agreement will not undermine the statutory purposes of sentencing.

Count I is apparently the more serious offense.... A dismissal of Count I does not assure that Count II adequately reflects the seriousness of the actual offense behavior and accepting the plea agreement may undermine the statutory purposes of sentencing or the sentencing guidelines....

October 4, 1994 Order at 1–2.

Ritsema declined to withdraw his plea and moved to dismiss Count I pursuant to the plea agreement. The district court refused. In its order denying the motion, the court explained:

> [T]he Seventh Circuit Court of Appeals ... suggested that this Court would have rejected the plea agreement had it not believed that the second count adequately reflected the seriousness of the actual offense behavior.
>
> This Court has a continuing obligation at sentencing and at resentencing to determine whether the plea agreement adequately reflects the defendant's actual offense conduct and does not undermine the sentencing guidelines. It did just that at resentencing, believing it had the direction, authority and justification to do so.

November 17, 1994 Order at 4–5. The court went on to reject Ritsema's argument that the Double Jeopardy Clause precluded reinstatement of Count I after it had already been dismissed pursuant to the plea agreement, as well as his contention that rejection of the plea agreement contravened the terms of the remand that we had ordered. *Id.* at 5–6.

The matter was put down for trial on Count I of the indictment. A jury convicted Ritsema on that charge at the conclusion of a one-day trial. At sentencing, the court used Ritsema's conviction on Count I as the springboard to consider Ritsema's threats against K.J.L., conduct that we had deemed insufficiently related to Count II to be included in the calculation of Ritsema's sentencing range.[1] The court sentenced Ritsema to a term of 121 months on Counts I and

---

**1.** In *Ritsema I*, we noted that "[i]n the end, [the district court] held Ritsema accountable for criminal acts that could have been relevant conduct had Ritsema pled guilty to being a felon-in-

possession of a firearm, but that were unrelated to his possession of unregistered silencers." 31 F.3d at 561–62 (footnote omitted).

II, the upper limit of the Guideline range. This appeal followed.

## II.

On three grounds, Ritsema argues that the district court was precluded on remand from vacating its prior acceptance of the plea agreement and reinstating Count I of the indictment.[2] He argues first that Rule 11 of the Federal Rules of Criminal Procedure does not permit a district court to revoke its acceptance of a plea agreement once it has approved the agreement without condition. He argues further that jeopardy attached to the dismissal of Count I pursuant to his plea agreement with the government, thus barring subsequent reinstatement of that count at a later date. Finally, he points out that at the conclusion of the prior appeal, we remanded this case for the limited purpose of resentencing. When the district court revisited the plea agreement and decided to revoke its prior acceptance of that agreement, Ritsema contends, the court exceeded the limited scope of the remand we ordered. Under the circumstances of this case, we conclude that the district court lacked authority under Rule 11 to vacate the plea and reinstate the dismissed count of the indictment. Because we reverse the judgment below on that basis, we need not address Ritsema's other arguments.

■ We begin our analysis with a summary of the pertinent provisions of Rule 11. Rule 11(e)(1) provides:

> The attorney for the government and the attorney for the defendant or the defendant when acting pro se may engage in discussions with a view toward reaching an agreement that, upon the entering of a plea of guilty or nolo contendere to a charged offense, the attorney for the government will do any of the following:
>
> > (A) move for dismiss of other charges; or

> > (B) make a recommendation, or agree not to oppose the defendant's request, for a particular sentence, with the understanding that such recommendation or request shall not be binding upon the court;
>
> > (C) agree that a specific sentence is the appropriate disposition of the case.
>
> The court shall not participate in any such discussions.

The agreement entered into by the government and Ritsema contained provisions referenced in both (A) and (B) above: In exchange for Ritsema's plea of guilty to Count II of the indictment, the government agreed to dismiss Count I and to recommend at sentencing that Ritsema receive maximum credit for the acceptance of responsibility. The options available to the court at this juncture are set out in subdivision (e)(2) of the Rule:

> If a plea agreement has been reached by the parties, the court shall, on the record, require the disclosure of the agreement in open court or, on a showing of good cause, in camera, at the time the plea is offered. If the agreement is of the type specified in subdivision (e)(1)(A) or (C), the court may accept or reject the agreement, or may defer its decision as to the acceptance or rejection until there has been an opportunity to consider the presentence report. If the agreement is of the type specified in subdivision (e)(1)(B), the court shall advise the defendant that if the court does not accept the recommendation or request the defendant nevertheless has no right to withdraw the plea.

Fed.R.Crim.P. 11(e)(2).

We note that section 6B1.1(c) of Sentencing Guidelines eliminates the authority of the court to accept a plea agreement immediately in all cases except those in which, pursuant to section 6A1.1, the court finds a presentence report unnecessary for sentencing purposes.[3] Section 6B1.1(c) provides:

---

2. Ritsema also argues that the district court erred in admitting certain testimony regarding the sexual assault of K.J.L. at the trial on the felon-in-possession charge. Because we conclude that the district court lacked authority to vacate its prior acceptance of the plea agree-

ment, which provided for dismissal of that charge, we need not address this argument.

3. Section 6A1.1 states:

A probation officer shall conduct a presentence investigation and report to the court before the

The court shall defer its decision to accept or reject any nonbinding recommendation pursuant to Rule 11(e)(1)(B), and the court's decision to accept or reject any plea agreement pursuant to Rules 11(e)(1)(A) and 11(e)(1)(C) until there has been an opportunity to consider the presentence report, unless a report is not required under § 6A1.1.

The commentary explains the modification:

Section 6B1.1(c) deals with the timing of the court's decision whether to accept the plea agreement. Rule 11(e)(2) gives the court discretion to accept the plea agreement immediately or defer acceptance pending consideration of the presentence report. Prior to the guidelines, an immediate decision was permissible because, under Rule 32(c), Fed.R.Crim.P., the defendant could waive preparation of the presentence report. Section 6B1.1(c) reflects the changes in practice required by § 6A1.1 and amended Rule 32(c)(1). Since a presentence report normally will be prepared, the court must defer acceptance of the plea agreement until the court has had an opportunity to consider the presentence report.

U.S.S.G. § 6B1.1, comment. *See United States v. Foy*, 28 F.3d 464, 470–71 (5th Cir.), *cert. denied*, — U.S. —, 115 S.Ct. 610, 130 L.Ed.2d 520 (1994); *United States v. Cordova–Perez*, 65 F.3d 1552, 1556–57 (9th Cir. 1995), *petition for cert. filed* (May 22, 1996) (No. 95–9101).

When he was presented with the terms of the plea agreement, the district judge deferred a decision on accepting or rejecting the plea until he had first seen a presentence report, as section 6B1.1(c) of the Guidelines requires. The court did accept Ritsema's plea of guilty to Count II, subject to his right under Rule 11(e)(4) to withdraw the plea in the event that the court rejected the agreement, and the court ordered the Probation Office to conduct a presentence investigation. R. 45. Two months later, Ritsema appeared before the court for a decision on the plea agreement and for sentencing. At that time, the court had in hand the presentence report detailing the circumstances underlying the indictment, including the use of a gun to threaten K.J.L. The court decided to accept the plea. Section 6B1.2(a) of the Sentencing Guidelines permits the district court to accept plea agreements that provide for the dismissal of certain charges "if the court determines, for reasons stated on the record, that the remaining charges adequately reflect the seriousness of the actual offense behavior and that accepting the agreement will not undermine the statutory purposes of sentencing or the sentencing guidelines." The district court so found here, expressly noting that "the offense of conviction adequately represents the defendant's criminal conduct." R. 39 at 45. Count I of the indictment was thus dismissed with prejudice pursuant to the plea agreement. R. 39 at 49; R. 33 at 1.[4]

As the express terms of Rule 11 reveal, the district court is barred from intruding upon the negotiation of plea agreements. The court's role is limited to the approval or rejection of an agreement once finalized, and its options in that regard are few. The court may reject the agreement immediately,[5] it may accept it immediately

---

imposition of sentence unless the court finds that there is information in the record sufficient to enable the meaningful exercise of sentencing authority pursuant to 18 U.S.C. § 3553, and the court explains this finding on the record. Rule 32(c)(1), Fed.R.Crim.P. The defendant may not waive preparation of the presentence report.

4. As we noted earlier, however, Judge Shabaz did not accept the government's recommendation that Ritsema be given the maximum three-point credit for acceptance of responsibility pursuant to Guidelines section 3E1.1; he did not believe that Ritsema was entitled even to the standard two-point reduction for acceptance of responsibility.

5. With respect to the court's power to reject a plea, we have noted:

While a defendant has no absolute right to have a guilty plea accepted, a court must exercise sound discretion in determining whether or not to reject a plea. *Santobello v. New York*, 404 U.S. 257, 262, 92 S.Ct. 495, 498, 30 L.Ed.2d 427 (1971). Thus a defendant is entitled to plead guilty unless the district court can articulate a sound reason for rejecting the plea. *United States v. Davis*, 516 F.2d 574, 578 (7th Cir.1975).

*United States v. Delegal*, 678 F.2d 47, 50 (7th Cir.1982).

(in the rare case that a presentence report will not be prepared), or it may defer decision until it has the benefit of the information provided by a presentence report. "There is, of course, no absolute right to have a guilty plea accepted." *Santobello v. New York*, 404 U.S. 257, 262, 92 S.Ct. 495, 498, 30 L.Ed.2d 427 (1971). Once the court has accepted a plea agreement, however, it is, as a general rule, bound by the terms of that agreement. *United States v. Skidmore*, 998 F.2d 372, 374–76 (6th Cir.1993); *United States v. Fagan*, 996 F.2d 1009, 1013 (9th Cir.1993); *United States v. Yesil*, 991 F.2d 1527, 1531–32 (11th Cir.1992); *United States v. Cunavelis*, 969 F.2d 1419, 1422–23 (2d Cir.1992); *United States v. Fernandez*, 960 F.2d 771, 773 (9th Cir.1992) (per curiam); *United States v. Olesen*, 920 F.2d 538, 540–43 (8th Cir.1990); *United States v. Partida–Parra*, 859 F.2d 629, 631–33 (9th Cir.1988); *United States v. Holman*, 728 F.2d 809, 813 (6th Cir.), *cert. denied*, 469 U.S. 983, 105 S.Ct. 388, 83 L.Ed.2d 323 (1984); *United States v. Cruz*, 709 F.2d 111, 114–15 (1st Cir.1983);[6] *United States v. Blackwell*, 694 F.2d 1325, 1338–39 & n. 19 (D.C.Cir.1982). There is no provision in the rules allowing a court to reject or modify an agreement once accepted. *Skidmore*, 998 F.2d at 375; *Olesen*, 920 F.2d at 540; *Partida–Parra*, 859 F.2d at 632–33; *Cruz*, 709 F.2d at 114–15.[7] On the contrary, the principle that a plea agreement once accepted is binding is signaled by Rule 11 itself. For example, the rule explains:

We do not confront the same situation here, of course. The district court properly reserved decision on acceptance of Ritsema's plea agreement with the government pending preparation and review of the presentence report. Only after reviewing that report did the court approve the agreement. At that juncture, the court became bound by the terms of the agreement. Even if we assume, as the Sixth Circuit has concluded, that section 6B1.1(c) would permit the court, upon review of the presentence report, to reject an agreement it had already appeared to approve unqualifiedly, nothing in the guideline authorizes the court to accept a plea agreement having already seen the presentence report and later withdraw its acceptance. Thus, the core principle of *Cruz*, *Holman*, and the other cases we have cited—that a district court is bound by a plea agreement once properly accepted—remains good law. *See, e.g., Skidmore*, 998 F.2d at 374–76 (relying on *Holman*, among other cases, to hold that district court erred in refusing to honor forfeiture provision of plea agreement it had accepted); *Yesil*, 991 F.2d at 1531–32 (relying on *Cruz* and *Holman*, among other cases, to hold that district court erred in refusing to grant evidentiary hearing concerning extent of defendants' assistance to government, when plea agreements that court had accepted previously required government to apprise court of extent of defendants' cooperation).

---

**6.** *Cruz* holds that a district court, having already accepted without qualification a plea agreement which calls for the dismissal of a charge, cannot later reject the agreement and order the dismissed charge reinstated. The First Circuit's holding was founded in limited part on the notion that jeopardy attaches to the acceptance of a guilty plea, and the court thus cannot later rescind its acceptance of the plea absent "manifest necessity." *See* 709 F.2d at 114. To that extent, *Ohio v. Johnson*, 467 U.S. 493, 104 S.Ct. 2536, 81 L.Ed.2d 425 (1984), is thought to have overruled *Cruz*. *See, e.g., United States v. Santiago Soto*, 825 F.2d 616, 619 (1st Cir.1987). We nevertheless cite *Cruz*, as have many other courts, for the proposition that Rule 11 does not authorize the court to withdraw its prior acceptance of a plea agreement. *See Cruz* at 114 (even if district judge does not violate the Double Jeopardy Clause by changing his mind about a plea, he is still constrained by the federal rules); *United States v. Kurkculer*, 918 F.2d 295, 301 (1st Cir.1990). *See also* n. 7, *infra*.

**7.** *Cruz* and *Holman* held that the court lacks authority to reject a plea agreement upon review of the presentence report if the court has previously accepted the plea without qualification. As we have noted, Guidelines section 6B1.1(c) eliminates the court's discretion under Rule 11(e)(2) to accept a plea agreement immediately, prior to preparation and review of a presentence report, unless no such report is to be prepared. In view of this guideline, the Fifth, Sixth, and Ninth Circuits have concluded that a court is not barred from rejecting a plea agreement upon review of the presentence report even if the court has already purported to accept the plea agreement—or, in the Fifth and Ninth Circuit cases, the defendant's plea—without qualification. *United States v. Kemper*, 908 F.2d 33, 35–37 (6th Cir.1990); *Fields v. United States*, 963 F.2d 105, 108 (6th Cir.1992); *Foy*, 28 F.3d at 470–71; *Cordova–Perez*, 65 F.3d at 1555–57. Such premature acceptance can only be viewed as an acceptance contingent upon review of the presentence report, these courts have reasoned, reserving to the court the right to reject the plea agreement once it has considered the presentence report. *Kemper*, 908 F.2d at 36; *Fields*, 963 F.2d at 108; *United States v. Johnson*, 979 F.2d 396, 398 n. 2 (6th Cir.1992); *Cordova–Perez*, 65 F.3d at 1556–57. Thus, in the view of these courts, *Cruz* and *Holman* have been overruled by the guideline. *See Foy*, 28 F.3d at 470–71 & n. 16; *Cordova–Perez*, 65 F.3d at 1556 & n. 6.

If the court accepts the plea agreement, the court shall inform the defendant that it will embody in the judgment and sentence the disposition provided for in the plea agreement.

Rule 11(e)(3). "Thus, the rule plainly contemplates that plea agreements executed pursuant to subdivision (e)(1)(A) or (C)—in contrast to the precatory nature of agreements made under subdivision (e)(1)(B)—are binding on the district court." *Cunavelis,* 969 F.2d at 1422. The fact that the rule also permits (and the Guidelines now require) the court to defer acceptance or rejection of the plea agreement until a presentence report is prepared also speaks to the binding quality of the court's acceptance; for "[i]f the court [were] free to accept or reject at any time there would be no need to include deferral as an option." *Holman,* 728 F.2d at 812. *See also Partida–Parra,* 859 F.2d at 633 (noting that what is now Fed.R.Crim.P. 32(e) allows defendant to withdraw plea for "any fair and just reason," but neither that nor any other rule allows government to make similar motion). Simply put, "'the district court is not authorized to go beyond the confines of Rule 11 in accepting or rejecting plea agreements.'" *Skidmore,* 998 F.2d at 375 (quoting *Partida–Parra,* 859 F.2d at 632).[8]

Several courts have recognized the possibility that approval of a plea agreement might later be rescinded based on the defendant's fraud upon the court. *See Skidmore,* 998 F.2d at 375 n. 1; *Partida–Parra,* 859 F.2d at 632; *Olesen,* 920 F.2d at 541; *Blackwell,* 694 F.2d at 1338 & n. 18. As the Ninth Circuit noted, "[t]he fraud exception is grounded in the court's inherent supervisory powers, which enable the court to preserve the integrity of the judicial process." *Partida–Parra,* 859 F.2d at 632–33 (citing, *inter alia,* our decision in *United States v. Cortina,* 630 F.2d 1207, 1214 (7th Cir.1980)). But this narrow exception is inapplicable here. The government does not argue, nor could it on the record before us, that Ritsema engaged in any sort of fraud or deception. The sole basis for the district court's determination to withdraw its prior approval of the plea agreement was its belief, derived from our opinion in the prior appeal, that it had erred in deeming the count to which Ritsema pled guilty adequately representative of his criminal conduct.

Contract principles are frequently invoked when questions arise as to the interpretation and enforcement of plea agreements (*e.g., United States v. Barnes,* 83 F.3d 934, 938 (7th Cir.1996)), and the district court may have believed that its professed mistake in accepting the agreement in the first instance relieved it of any obligation to honor the terms of that agreement. *Cf. United States v. Atkinson,* 979 F.2d 1219, 1222–23 (7th Cir.1992) (reformation of plea agreement sought where sentencing provisions incorporated into that agreement were based on erroneous assumption concerning defendant's criminal history). Yet, as we recognized in *Atkinson,* "the contract analogy has limits in this context" (*id.* at 1223); and the analogy does not permit a court, based on its own unilateral mistake, to withdraw its prior approval of a plea bargain that accurately re-

---

**8.** We do not read *United States v. Plaza–Garcia,* 914 F.2d 345 (1st Cir.1990), which the district court cited in support of the decision to withdraw its approval of the plea agreement, to conflict with our analysis. In that case, the defendant pled guilty to one count of a twelve-count indictment charging him with sexually exploiting a minor, among other offenses. At sentencing, the district court departed upward from the Guidelines sentencing range. In doing so, it appeared to accept the probation officer's recommendation that the departure correspond to the higher base offense level that would have applied had the defendant pled guilty to more than one count of the indictment. Because that higher offense level had been calculated incorrectly, and the district court may have relied on it in determining the extent of the upward departure, the First Circuit reversed. *Id.* at 347–48. In so doing, the court of appeals noted that the district court seemingly had departed from the guideline range believing that the sentence should reflect the conduct underlying the eleven counts of the indictment that had been dismissed in exchange for the defendant's plea. "But if the court believed that defendant's punishment should reflect that conduct," then Chief Judge (now Justice) Breyer asked, "why did it accept the plea bargain in the first place?" *Id.* at 348. To the extent that the First Circuit's remark can be read to suggest that the district court may have erred in accepting the plea agreement, we do not believe the court of appeals meant to suggest that the district judge was free to revisit the plea bargain on remand. We are aware of no authority for that extraordinary step.

flects the terms of the parties' agreement and with which the defendant has complied. *See Fagan,* 996 F.2d at 1013 ("[t]he government's subsequent discovery that its decision to enter this plea agreement was based on a mistake of fact did not nullify the agreement or excuse the government from compliance with its terms"); *Olesen,* 920 F.2d at 541–42 (court erred in reforming plea agreement in which government had stipulated to criminal history category that underrepresented defendant's criminal history); *Partida–Parra,* 859 F.2d at 634 (court erred in vacating plea based on government's mistake). The court's authority to modify or vacate previously approved plea agreements is constrained by the Rules of Criminal Procedure. *Partida–Parra,* 859 F.2d at 634. As we have emphasized, these rules do not grant the court the power to revisit a plea merely because at a later date the court has second thoughts about a bargain it has already approved. By the time the court approved the plea bargain here, the nature of the charges against Ritsema, the facts underlying those charges, and the terms of the government's agreement with him were clear. When it approved the agreement after review of the presentence report, the court no doubt had an expectation, consistent with the determinations it subsequently made under the Sentencing Guidelines, that Ritsema's use of a firearm to threaten K.J.L. into silence about the sexual assault could and would be reflected in the sentence imposed on the unregistered silencers charge. The government may well have shared that notion. As our opinion in *Ritsema I* reveals, that expectation was misplaced. But in this sense we note that the court and the government were in a position no different from the many defendants who plead guilty to a single charge, only to see their sentences skyrocket based on other criminal conduct deemed pertinent by the Guidelines. These defendants are rarely released from their agreements, despite the fact that the plea bargain has turned out not to be such a bargain after all. *See, e.g., United States v. Jackson,* 983 F.2d 757, 770 (7th Cir.1993) (defendant could not have withdrawn guilty plea on the ground that he underestimated Sentencing Guideline range).

The fact that we remanded the case to the district court at the conclusion of the first appeal did not open the door to reconsideration of the plea bargain. We remanded for the sole purpose of resentencing in accord with our previous opinion. Nothing we said in that opinion had any effect on the binding nature of the plea agreement, which the district court had long since accepted without qualification. The fact that we vacated Ritsema's sentence "[did] not authorize the judge to remake or vacate the plea bargain for whatever reasons later seem[ed] appropriate to [him]." *Blackwell,* 694 F.2d at 1339. Contrary to the district court's suggestion, Rule 11 does not permit, let alone obligate, a court to reconsider the merits of a plea agreement each time the defendant appears before the court for sentencing. True, the rule allows the court to withhold approval until such time as it has reviewed the presentence report and Guideline section 6B1.1(c) requires the court to take that opportunity in most instances; final approval of a plea agreement normally will not occur, therefore, until sentencing. But once the court has seen the presentence report and given its approval, it is not free to revisit the plea agreement simply because, for whatever reason, the defendant later comes back to the court for resentencing, as Ritsema did here.

■ Although district judges are barred from the plea negotiation process by Rule 11, once they have given unqualified approval to a plea agreement they, like the parties, become bound by the terms of that agreement. *Skidmore,* 998 F.2d at 376; *Yesil,* 991 F.2d at 1532; *Holman,* 728 F.2d at 813. Were courts free to re-examine the wisdom of plea bargains with the benefit of hindsight, the agreements themselves would lack finality and the benefits that encourage the government and defendants to enter into pleas might prove illusory, just as they did here. As Judge Wald noted in *Blackwell:*

> Rule 11's requirement that the judge make a definite announcement of acceptance, rejection, or deferral of her decision about a plea bargain is indispensable to a criminal justice system so heavily dependent on plea bargaining. *See Santobello v. New York,* 404 U.S. at 260, 92 S.Ct. at 498 (plea

bargaining is "an essential component of the administration of justice"). Pleas that bind only the defendant, or even the prosecutor and the defendant, but not the judge, would be unfair to the defendant and would dilute the incentive for defendants to plead at all. . . .

The judge's faithful observance of the requirements of Rule 11 is just as vital to the fairness and efficiency of the process as the prosecutor's compliance. She has a primary duty under that rule to insure not only that the terms of the bargain are understood by the defendant but that they are adhered to by both sides, as well as by the court itself. . . .

694 F.2d at 1339; *accord Yesil,* 991 F.2d at 1532.

We are therefore constrained to conclude that when it withdrew its prior approval of Ritsema's plea agreement with the government, the district court exceeded its limited authority under Rule 11. Once the court signed off on the agreement at Ritsema's first sentencing in 1993, it became bound by the terms of the agreement and could not, absent proof of fraud or breach of the plea bargain, set the agreement aside. The court therefore erred in reinstating Count I of the indictment and ordering Ritsema tried on that charge.

Normally, there are two remedies available to a defendant for a broken plea agreement: permitting him to withdraw his guilty plea or ordering specific performance of the agreement. *See Santobello,* 404 U.S. at 263, 92 S.Ct. at 499; *Skidmore,* 998 F.2d at 375–76; *Yesil,* 991 F.2d at 1532–33; *Olesen,* 920 F.2d at 540; *Holman,* 728 F.2d at 813. Our purpose in selecting a remedy is to alleviate the prejudice to Ritsema, *id.,* and it is clear which alternative will accomplish that end here. Although the district court prudently offered Ritsema the chance to withdraw his plea of guilty to Count II after it withdrew its approval of the plea bargain and ordered Count I reinstated, Ritsema declined that offer and opposed reinstatement of the felon-in-possession charge. He was tried, convicted, and ultimately resentenced on the basis of that charge, resulting in a sentence substantially greater than any sentence that

might properly be imposed on the unregistered silencers charge alone (as our opinion in *Ritsema I* makes clear). *See United States v. Delegal,* 678 F.2d 47, 52 (7th Cir. 1982); *Holman,* 728 F.2d at 813; *see also Fagan,* 996 F.2d at 1013–14. We believe that the plea agreement must be honored: Ritsema's conviction on Count I will be vacated, that charge will be dismissed with prejudice, and Ritsema will be sentenced on Count II alone.

## III.

We were somewhat critical of the government in our first opinion, questioning why, for example, it chose the silencer charge as the basis for Ritsema's plea rather than the felon-in-possession charge. *E.g.,* 31 F.3d at 563 n. 6. The government has had the opportunity to explain that decision in this appeal. We now know that, at the time of the plea, the government was unaware that Ritsema had used a firearm to threaten K.J.L. after the September 8 sexual assault. That information did not come to light until the probation officer reviewed the files of the Wisconsin State Probation Office, interviewed K.J.L., and presented what she discovered in the presentence report. No sooner than that (and possibly not until we issued our opinion in the first appeal) did the government realize why which of the two counts to which Ritsema pled guilty mattered.

We also remarked that "the way in which the court applied the guidelines to Ritsema's conviction seemed to indicate" that the silencers charge did not reflect the gravity of Ritsema's behavior, despite the court's finding to the contrary. 31 F.3d at 561. The district court construed this as a suggestion that it had erred in accepting the plea agreement. We did not mean to second guess or criticize the district court's approval of the plea agreement, and we regret any misunderstanding in that regard. Yet, even if we had believed, or the district court had on reflection concluded, as it did, that the plea agreement should not have been approved in the first instance, Rule 11 would not allow for second thoughts. "Having accepted the agreement, the district court was required to adhere to the terms contained in the agree-

ment as the parties understood those terms." *Skidmore*, 998 F.2d at 376 (citing *Olesen*, 920 F.2d at 540).

We therefore vacate Ritsema's conviction on Count I and return the case to the district court with directions to dismiss Count I with prejudice pursuant to the plea agreement and to re-sentence Ritsema on Count II alone, in accord with *Ritsema I*. Circuit Rule 36 shall apply on remand.

VACATED and REMANDED.