#28268-r-GAS
**2018 S.D. 9**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,           Plaintiff and Appellee,

    v.

LANDON LYNDALE HALE,           Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE SUSAN M. SABERS
Judge

* * * *

MARTY J. JACKLEY
Attorney General

PATRICIA ARCHER
Assistant Attorney General
Pierre, South Dakota           Attorneys for plaintiff
                                  and appellee.

D. SONNY WALTER
Sioux Falls, South Dakota       Attorney for defendant
                                  and appellant.

* * * *

CONSIDERED ON BRIEFS
ON JANUARY 8, 2018
OPINION FILED **01/24/18**

#28268

SEVERSON, Justice

[¶1.] The State and defendant entered into a plea agreement. At the change of plea hearing, the circuit court accepted defendant's guilty plea and the factual basis to support the plea. The circuit court did not indicate specific acceptance or rejection of the plea agreement at that hearing; nor did the court defer its decision to order a presentence investigation. Approximately two weeks later, the circuit court informed the State and defendant that it intended to reject the plea agreement. The State and defendant objected, contending that the court had previously accepted the agreement. After a hearing, the court entered an order rejecting the plea agreement. Defendant filed a petition for an intermediate appeal, which we granted. On appeal, defendant claims the circuit court was bound by the plea agreement, and the State agrees. We reverse and remand.

## Background

[¶2.] The State indicted Landon Lyndale Hale on nineteen counts related to the kidnapping and robbery of Caden Jackson on July 23, 2016. In February 2017, the State and Hale reached a plea agreement. The agreement required Hale to plead guilty to a single count of aggravated assault and to cooperate in any upcoming trials against Hale's two codefendants. In exchange, the State would dismiss the remaining charges, including a part II habitual offender information. The plea agreement contained an agreed-upon disposition; specifically, a sentencing cap of suspended prison time.

[¶3.] On February 15, 2017, the circuit court held a change of plea hearing. The parties informed the court that a plea agreement had been reached and

-1-

presented the plea agreement to the court.  The court re-arraigned Hale on the

charge of aggravated assault.  It explained the nature of the charge and that the

maximum possible punishment was 15 years in prison and a $30,000 fine.  The

court then remarked,

> **THE COURT:** The plea agreement here does not let me use any of that penitentiary time immediately.  The most it let's [sic] me do is send you to county jail for 180 days.  I can suspend up to the full 15 years in the penitentiary.  You'd be out on my probation.  As long as you comply with the terms of my probation, you can keep yourself out of the pen.  But if you mess up on probation, I'll have the 15 years or whatever amount I've suspended waiting for you.  The state can bring you back to court and ask that I send you to the pen.  You understand that?
>
> **THE DEFENDANT:** Yes, ma'am.
>
> **THE COURT:** So Mr. Walter's plea negotiation keeps you out of the pen here today.  But moving forward when you're on my probation the only thing that keeps you out of the pen is you not doing stuff like this.  You got that?
>
> **THE DEFENDANT:** Yes, ma'am.
>
> **THE COURT:** The Part II, which would have increased that felony-level charge, will be dismissed by the state, as will all of the remaining charges, including the kidnapping charge which would have had a life sentence attached to it.  You understand that?
>
> **THE DEFENDANT:** Yes, ma'am.
>
> **THE COURT:** Okay.  Knowing what you know now, would you like to go ahead and take the plea agreement today?
>
> **THE DEFENDANT:** Yes.
>
> **THE COURT:** I'm going to re-remind you of your rights before I take that plea.

The court then canvassed Hale on his rights.  Hale indicated that he understood

that by pleading guilty he would be giving up those rights.  The court then asked,

"Have you discussed the effect of this plea agreement with your lawyer?" Hale responded that he had and indicated his satisfaction with his attorney's advice and performance. The court asked Hale if he had any questions. Hale indicated that he did not. The court asked Hale, "What is your plea to Count 5 of the indictment, Aggravated Assault with a gun?" Hale responded, "Guilty." After ensuring that Hale pleaded guilty of his own free will, the court then asked Hale whether "[a]ny promises [were] made to [him] to get [him] to enter the plea other than the plea agreement that we talked about?" Hale replied, "No, ma'am."

[¶4.]      The court asked for the facts to support the plea. The State indicated that it had an affidavit from Hale to offer as the factual basis. The court read the affidavit on the record. Afterward, the court confirmed with Hale that Hale agreed with the facts and that it was his signature on the affidavit. The court accepted the affidavit "as a valid factual basis" and found "that it adequately meets with the statutory requirements for aggravated assault." The court found that Hale "has been advised and understands the nature of the charges" and "the penalties which can be imposed." The court then accepted the plea and found Hale "guilty of aggravated assault."

[¶5.]      Hale's codefendants also pleaded guilty: one on February 23, 2017, and the other on February 24. Then, on March 6, the circuit court ordered a presentence investigation report to be completed on Hale. The court also informed the State and counsel for Hale via email that it intended to reject the plea agreement. The State and Hale's counsel requested that the circuit court reconsider its decision to reject the plea agreement.

[¶6.]        The circuit court held a hearing on April 21, 2017. At the hearing, the State and Hale again requested that the court reconsider its decision. They both argued that the court had accepted the plea agreement at the change of plea hearing in February and that Hale cooperated in the prosecution of his codefendants as required by the plea agreement. The court disagreed that it had accepted the plea agreement. It referred to the transcript from the change of plea hearing. The court also distinguished cases cited by the parties. At the conclusion of the hearing, the court rejected the plea agreement. It informed Hale that he could withdraw his guilty plea and go to trial or continue to plead guilty.

[¶7.]        Following the hearing, the circuit court issued findings of fact and conclusions of law and an order. The court found that although it had "expressly accepted [Hale's] plea at the plea hearing, it did not accept the plea agreement— either expressly or impliedly." The court rejected the claim that by accepting Hale's guilty plea and the factual basis for that plea, the court thereby accepted the plea agreement. The court likewise rejected the argument that outlining the particulars of the plea agreement to Hale during the change of plea hearing meant that the court was bound to honor the agreement.

[¶8.]        The circuit court distinguished this Court's past cases concerning plea agreements. The court cited SDCL 23A-7-11 (Rule 11(e)(4)) as authority for rejecting the plea agreement. It emphasized that it complied with SDCL 23A-7-11 (Rule 11(e)(4)) because it informed the parties of its intent to reject the plea agreement and gave Hale the opportunity to withdraw his plea.

[¶9.]     After the circuit court entered an order rejecting the plea agreement, the State filed written objections. The court denied the State's objections, and Hale filed a petition with this Court for an intermediate discretionary appeal. We granted Hale's petition. On appeal, Hale asserts that the circuit court erred when it rejected the plea agreement. The State agrees with Hale's position and requests that the matter be remanded for Hale to be sentenced consistent with the terms of the plea agreement.

## Analysis

[¶10.]     Because this is an intermediate appeal, the circuit court has not yet sentenced Hale. Nor has Hale withdrawn or persisted in his guilty plea following the circuit court's entry of an order rejecting the plea agreement. Therefore, we need only decide whether the circuit court accepted a binding plea agreement at the February 2017 change of plea hearing.

[¶11.]     Whether the circuit court accepted a binding plea agreement is a question of law reviewed de novo. *State v. Shumaker*, 2010 S.D. 95, ¶ 5, 792 N.W.2d 174, 175. Chapter 23A-7 governs plea agreements. Under SDCL 23A-7-8, the prosecuting attorney and counsel for the defendant (or the defendant if pro se) may engage in discussions in an attempt to reach a plea agreement. The prosecuting attorney has discretion to:

> (1)     Move for dismissal of other charges or not file additional charges arising out of a different occurrence;
>
> (2)     Make a recommendation, or agree not to oppose the defendant's request, for a particular sentence, with the understanding that such recommendation or request shall not be binding upon the court;
>
> (3)     Agree that a specific sentence is the appropriate disposition of the case; or

(4)     Perform other specified acts to be made a part of the agreement.

*Id.* We have consistently said that a plea agreement accepted under subsection (2) does not restrict the court's discretion when sentencing a defendant. *Shumaker*, 2010 S.D. 95, ¶ 6 n.1, 792 N.W.2d at 175 n.1; *State v. Reaves*, 2008 S.D. 105, ¶ 7, 757 N.W.2d 580, 582. However, a plea agreement accepted under subsection (3) restricts the court to sentencing the defendant within the bounds of the plea agreement. *Shumaker*, 2010 S.D. 95, ¶ 6, 792 N.W.2d at 175; *Reaves*, 2008 S.D. 105, ¶ 7, 757 N.W.2d at 582.

[¶12.]     Both the State and Hale contend that the plea agreement in this case falls under SDCL 23A-7-8(3) because the parties negotiated an agreed disposition (suspended penitentiary time), rather than a recommended sentence. At the change of plea hearing, counsel for Hale informed the court that "Mr. Hale will be entering a plea of guilty to Count IV Aggravated Assault [(counsel later explained that the proper count was Count V, rather than IV)], a cap of a suspended execution of sentence. The other charge, charges, and the Part II Information will be dismissed, and he will cooperate in any upcoming trial of the codefendants." The State agreed with counsel's summary of the terms of the agreement.

[¶13.]     We note and find problematic that neither the State nor defense counsel specifically informed the circuit court that they intended the agreement to be a binding plea agreement under SDCL 23A-7-8(3). Indeed, in its appellate brief, the State recognizes that "the plea agreement, orally stated on the record, is not a model of clarity." Nevertheless, from our review of the transcript, the plea agreement was a binding plea agreement under SDCL 23A-7-8(3). It contained an

agreed-upon disposition—a suspended execution of sentence, with no immediate penitentiary time, and with placement on probation. And the court recognized its binding effect. The court stated, "The plea agreement here does not let me use any of that [15 years] penitentiary time immediately. The most it let's [sic] me do is send [Hale] to county jail for 180 days."

[¶14.]       A question remains, however, whether the circuit court accepted the binding agreement such that it must honor the agreed disposition when sentencing Hale. The State and Hale assert that the circuit court accepted the agreement at least implicitly. The circuit court, however, informed the parties that it had only accepted Hale's guilty plea and the factual basis to support that plea, not the plea agreement.

[¶15.]       Under SDCL 23A-7-9 (Rule 11(e)(2)), when a plea agreement has been reached, "the court shall, on the record, require the disclosure of the agreement in open court, or on a showing of good cause, in chambers, *at the time the plea is offered*." (Emphasis added.) The statute further provides that "[t]hereupon, the court may accept or reject the agreement, or may defer its decision as to the acceptance or rejection until there has been an opportunity to consider the presentence report." *Id.* (emphasis added). "If a court accepts the plea agreement, it shall inform the defendant that it will embody in the judgment and sentence the disposition provided for in the plea agreement." SDCL 23A-7-10 (Rule 11(e)(3)). "If a court rejects the plea agreement, it shall, on the record, inform the parties of this fact, advise the defendant personally in open court or, on a showing of good cause, in chambers, that the court is not bound by the plea agreement, afford the defendant

the opportunity to then withdraw his plea, if a plea has been entered, and advise him that if he persists in his guilty plea or plea of nolo contendere the disposition of the case may be less favorable to him than that contemplated by the plea agreement." SDCL 23A-7-11 (Rule 11(e)(4)).

[¶16.] It is undisputed that during the change of plea hearing the circuit court did not *expressly* accept or reject the plea agreement and did not defer its decision to consider a presentence report. However, in *Shumaker*, we recognized that a circuit court can implicitly accept a plea agreement at a change of plea hearing. 2010 S.D. 95, ¶¶ 7-8, 792 N.W.2d at 176; *accord Reaves*, 2008 S.D. 105, ¶ 7, 757 N.W.2d at 582 ("The court, in fact, implicitly accepted the plea agreement."). To determine whether the circuit court accepted the plea agreement in *Shumaker*, we examined the court's statements made during the change of plea hearing. 2010 S.D. 95, ¶¶ 7-8, 792 N.W.2d at 176. We recognized that the court had advised the defendant of the charges against her, her rights, and the penalties she faced under the statute as well as under the plea agreement. We noted that the court had informed the defendant that her attorney saved her from two years in the penitentiary. We further recognized that the court did not explicitly reject the plea agreement or advise the defendant as required under SDCL 23A-7-11 (Rule 11(e)(4)). Relying on the circuit court's reference to "this plea agreement" and lack of explicit rejection, we concluded that the court had accepted the binding plea agreement. *Shumaker*, 2010 S.D. 95, ¶ 7, 792 N.W.2d at 176.

[¶17.] Similarly, here, we conclude that the circuit court implicitly accepted the binding plea agreement at the change of plea hearing. At the beginning of the

hearing, after defense counsel described the plea agreement to the court, the court asked Hale, "Mr. Hale, does that sound like what you're here today to agree to?" Hale responded, "Yes." The court read the charged offense; aggravated assault. The court also informed Hale of his maximum possible punishment for that offense. However, the court then explained to Hale that the plea agreement restricted the court's imposition of punishment to a suspended sentence and probation. It remarked, "The plea agreement *here* does not let me use any of that penitentiary time immediately. The most it let's [sic] me do is send you to county jail for 180 days. I can suspend up to the full 15 years in the penitentiary. You'd be out on my probation." (Emphasis added.) The court further informed Hale that "Mr. Walter's plea negotiation keeps you out of the pen *here today*. But moving forward *when you're on my probation* the only thing that keeps you out of the pen is you not doing stuff like this. You got that?" (Emphasis added.) The court specifically asked Hale, "Knowing what you know now, *would you like to go ahead and take the plea agreement today*?" (Emphasis added.) Hale responded, "Yes."

[¶18.] Although the circuit court did not specifically "inform the defendant that it will embody in the judgment and sentence the disposition provided for in the plea agreement" as required by SDCL 23A-7-10 (Rule 11(e)(3)), the context of the court's statements at the change of plea hearing informed Hale that the court accepted the agreement and intended to sentence Hale as provided in that agreement. Also, the colloquy between Hale and the circuit court supports Hale's claim that the court's implicit acceptance of the plea agreement induced him to waive his fundamental rights and plead guilty. And the State agreed that Hale

cooperated in the prosecution of his codefendants as he agreed to do as part of the plea agreement.

[¶19.] In *State v. Lohnes*, we explained that "the duty of the state to perform its part of a plea bargain applies with equal force to the trial court[.]" 344 N.W.2d 686, 688 (S.D. 1984); *accord Brewer II v. Starcher*, 465 S.E.2d 185, 192-92 (W. Va. Sup. Ct. 1995). Indeed, "once the defendant has given up his 'bargaining chip' by pleading guilty, due process requires that the defendant's expectations be fulfilled." *State v. Waldner*, 2005 S.D. 11, ¶ 13, 692 N.W.2d 187, 191 (quoting *State v. Howard*, 630 N.W.2d 244, 250 (Wis. Ct. App. 2001)); *see Santobello v. New York*, 404 U.S. 257, 261-62, 92 S. Ct. 495, 30 L. Ed. 2d 427 (1971). This is not to say we believe the circuit court intentionally misled Hale. *See, e.g., Lohnes*, 344 N.W.2d at 689 (explaining that our disagreement "stems from our belief that in the circumstances of this case the promise to impose a sentence of less than life imprisonment implied a sentence with a release date certain within the defendant's life expectancy"). We further recognize that as set out in the court's findings of fact, the court was greatly troubled by the severity of Hale's culpability in the events leading to the kidnapping and robbery of Jackson. However, in light of the record and the circumstances of this case and because the circuit court at the time of the plea did not reject the agreement and did not defer its decision to accept or reject the agreement, the circuit court was required to sentence Hale within the bounds of the plea agreement. We reverse the circuit court's order rejecting the plea agreement. On remand, the circuit court is directed to sentence Hale consistent with the agreement.

#28268

[¶20.]      Reversed and remanded.

[¶21.]      GILBERTSON, Chief Justice, and ZINTER, KERN, and JENSEN,

Justices, concur.