FILED
IN THE OFFICE OF THE
CLERK OF SUPREME COURT
FEBRUARY 22, 2024
STATE OF NORTH DAKOTA

# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2024 ND 29

State of North Dakota,

Plaintiff and Appellee

v.

Devin Louis Fischer,

Defendant and Appellant

## No. 20230239

Appeal from the District Court of Williams County, Northwest Judicial District, the Honorable Benjamen J. Johnson, Judge.

AFFIRMED.

Opinion of the Court by Crothers, Justice.

Nathan K. Madden, Assistant State's Attorney, Williston, ND, for plaintiff and appellee; submitted on brief.

Richard E. Edinger, Fargo, ND, for for defendant and appellant.

**Crothers, Justice.**

[¶1] Devin Fischer appeals from a district court's judgment and amended judgment finding him guilty of reckless endangerment and terrorizing. Fischer argues the court erred by implicitly accepting and then rejecting a binding plea agreement, which required him to go to trial on the original charges. Fischer also argues the district court judge was biased against him and erred in not granting his motion to recuse. We affirm.

I

[¶2] On January 9, 2022, Fischer attempted to enter the home of his estranged wife but was unsuccessful. In the process, he fired four .38 caliber rounds into a door lock and door jam. Fischer left the home and disposed of the gun. The police later arrested Fischer and charged him with burglary, reckless endangerment, terrorizing and tampering with physical evidence.

[¶3] In January 2023, the State and Fischer reached a plea agreement. The agreement called for the State to dismiss the burglary, reckless endangerment, tampering with physical evidence charges, and to amend the class C felony terrorizing charge to class A misdemeanor menacing. On January 17, 2023, the district court held a hearing to consider the plea deal.

[¶4] Midway through the hearing, the district court learned that several individuals wanted to exercise their victim rights under N.D. Const. art. I, § 25(1)(g) and attend the court's hearing. The court proceeded with the change of plea, stating "[w]hat we're going to do is we'll deal with the guilty plea. We'll accept that, and then we'll see [when] they're going to be here and if we can work it in to do the sentencing this afternoon or tomorrow, but we'll just see with that."

[¶5] During the proceeding on January 17, 2023, the State notified the district court that this was a binding plea under N.D.R.Crim.P. 11, which the court acknowledged. That exchange included the following:

"The Court: Attorney Madden, this is binding under Rule 11?

Mr. Madden: Yes.

The Court: What that means, Mr. Fischer, is I have the authority to accept or reject the agreement. If I accept the agreement, I have to sentence you in accordance with it. If I reject the agreement, then I would allow you to withdraw your guilty plea and you can proceed to trial. Do you understand that?

The Defendant: I understand."

[¶6]   The State orally amended the terrorizing charge to menacing. Fischer pleaded guilty to the amended charge. The State provided a factual basis, which Fischer agreed was "substantially true and correct and that's why [he was] pleading guilty to this offense of menacing here today[.]" That factual basis included informing the court Fischer fired bullets into a locked door while people were in the house. After a Rule 11 colloquy, the court found the guilty plea was knowingly and voluntarily entered, an adequate factual basis existed, and accepted the guilty plea. The court "set aside the other counts till later" and planned to return later in the day or the next day to hear from the victims and for sentencing.

[¶7]   The next day, January 18, 2023, the district court judge opened the proceeding by stating, "This is a sentencing hearing. Defendant pled guilty yesterday to Class A misdemeanor of menacing." During the hearing three individuals provided victim impact statements, and one of them played the video of Fischer shooting the door and attempting to enter the home.

[¶8]   After watching the video, the district court judge stated the evidence and witnesses' statements create a "felony." He further stated, "[a]nd frankly, after watching that video, if the video was offered, I don't realistically see how he would be found not guilty of all of those charges." Subsequently, the court rejected the plea agreement.

[¶9]   On February 13, 2023, the district court conducted a pre-trial conference where it heard from the State and Fischer about rejection of the plea

agreement and Fischer's claim the court was biased due to the statements made by the judge during the proceeding on January 18. The court ruled that the plea agreement was not accepted, the fact that 18 hours lapsed between accepting the guilty plea and rejecting the plea agreement is not determinative, and the judge would not grant the motion to recuse because he made his statements in open court as part of the need to explain why he rejected the plea agreement.

[¶10] On May 8, 2023, the district court convened a three-day trial where the jury found Fischer guilty of terrorizing and reckless endangerment. The jury found Fischer not guilty on the charges of burglary and tampering with physical evidence. Fischer timely appealed in July 2023, and this Court temporarily remanded to the lower court to correct the judgment.

II

[¶11] Fischer argues the district court erred by rejecting his plea agreement the day after expressly accepting his guilty plea to the amended charge of menacing. The dispositive question is whether the court implicitly accepted the plea agreement by accepting Fischer's guilty plea to the reduced charge of menacing.

[¶12] We first consider our standard of review, which neither party briefed as required by N.D.R.App.P. 28(b)(7)(B). A district court has broad discretion in deciding whether to accept or reject a guilty plea or a plea agreement. *See Santobello v. New York*, 404 U.S. 257, 262 (1971) ("A court may reject a plea in exercise of judicial discretion."); *U.S. v. Vanderwerff*, 788 F.3d 1266, 1271 (10th Cir. 2015) ("We review a district court's decision not to accept a plea agreement for abuse of sound discretion."). This Court has not addressed the narrower issue raised here about whether a court's acceptance of a guilty plea constitutes the implicit acceptance of an overall plea agreement. Therefore, we have no precedent and look outward for guidance.

[¶13] North Dakota Rule of Criminal Procedure 11 is adopted from, and is similar to, F.R.Crim.P. 11. *See* N.D.R.Crim.P. 11, Explanatory Note. "[A]ny

3

interpretation and construction placed upon identical or similar language by the federal courts will be entitled to great weight in applying the rule to state courts." *State v. Holy Bull*, 238 N.W.2d 52, 55 (N.D. 1975). South Dakota also has adopted a criminal rule of procedure that is modeled after federal rule 11. *State v. Hale*, 2018 SD 9, ¶ 15, 907 N.W.2d 56. South Dakota Supreme Court addressed the appropriate standard of review in a similar case, concluding, "Whether the circuit court accepted a binding plea agreement is a question of law reviewed de novo." *Id.* at ¶ 11 (citing *State v. Shumaker*, 2010 SD 95, ¶ 5, 792 N.W.2d 174). A federal court similarly concluded, "Whether the district court is required to enforce a plea agreement is a question of law, which we review de novo." *U.S. v. Fagan*, 996 F.2d 1009, 1013 (9th Cir. 1993). We agree with these courts that the question whether a plea agreement was approved requires application of law rather than exercise of discretion. Therefore, we review Fischer's question de novo.

[¶14] "Once the court has accepted a plea agreement, however, it is, as a general rule, bound by the terms of that agreement." *U.S. v. Ritsema*, 89 F.3d 392, 399 (7th Cir. 1996); *see also U.S. v. Cunavelis*, 969 F.2d 1419, 1422 (2d Cir. 1992) (if the court accepts the plea agreement, it must conform to the sentence of that bargain); *Fagan*, 996 F.2d at 1012-14 ("once the district court accepts a guilty plea, absent fraud or breach of the plea agreement by the defendant, the court has no authority to vacate the guilty plea"); *U.S. v. Yesil*, 991 F.2d 1527, 1532-33 (11th Cir. 1992) (if the court accepted the plea agreements, the defendant's rights should be "redressed by specific performance of the plea agreement in the form of evidentiary hearings before a different district court judge"); *U.S. v. Olesen*, 920 F.2d 538, 540 (8th Cir. 1990) ("Once a court has accepted an agreement, however, there is no provision in the rules that allows it to reject or modify the agreement.").

[¶15] The entry of pleas and making of plea agreements is controlled by N.D.R.Crim.P. 11. Rule 11(a) regulates entry of guilty, not guilty, and conditional pleas. *Id.* Rule 11(b) regulates the advice judges must provide to defendants, ensuring voluntariness, and requiring a factual basis containing all elements of a crime before a guilty plea can be accepted. *Id.* Unlike Rule

4

11(a) and (b) pertaining to pleas, Rule 11(c) regulates the use of plea agreements. *Id.*

[¶16] Under N.D.R.Crim.P. 11(c)(2) "[t]he parties must disclose the plea agreement in open court when the plea is offered, unless the court for good cause allows the parties to disclose the plea agreement in camera." Here, the parties and the district court complied with this portion of Rule 11 by disclosing the agreement and its terms at the January 17, 2023 hearing.

[¶17] For a binding plea agreement like that offered here, "the court may accept the agreement, reject it, or defer a decision until the court has reviewed the presentence report." N.D.R.Crim.P. 11(c)(3)(A). If the agreement is accepted, the court "must inform the defendant that, to the extent the plea agreement is of the type specified in Rule 11(c)(1)(A) [forebear bringing or dismiss other charges] or (C) [agreed upon sentence], the agreed disposition will be included in the judgment." N.D.R.Crim.P. 11(c)(4). A court rejecting a binding plea agreement must do as follows:

> "If the court rejects a plea agreement containing provisions of the type specified in Rule 11(c)(1)(A) or (C), the court must do the following on the record and in open court:
>
> (A) inform the parties that the court rejects the plea agreement;
>
> (B) advise the defendant personally that the court is not required to follow the plea agreement and give the defendant an opportunity to withdraw the plea; and
>
> (C) advise the defendant personally that if the plea is not withdrawn, the court may dispose of the case less favorably toward the defendant than the plea agreement contemplated."

N.D.R.Crim.P. 11(c)(5).

[¶18] Here, the district court's proceedings and statements reflect uncertainty whether it was accepting a guilty plea only or accepting (or rejecting) the plea agreement. The court permitted the State to amend the terrorizing charge to

menacing and provide a factual basis. For purposes of this appeal, we conclude the court complied with N.D.R.Crim.P. 11(b) when accepting Fischer's guilty plea to the amended charge of menacing. However, when the court accepted the guilty plea, it and the parties created the current issue on appeal by not clearly establishing whether acceptance of the guilty plea constituted acceptance of the plea agreement as a whole.

[¶19] All parties agree this is a novel issue in North Dakota. Fischer argues our disposition should be guided by a South Dakota case holding that a court which expressly or implicitly accepts a plea agreement is bound by the agreement unless fraud has occurred. *Hale*, 2018 SD 9, ¶ 11.

[¶20] In *Hale*, the State and Hale made a plea deal in exchange for dismissing charges, pleading guilty to a reduced charge, limited incarceration, and him testifying against his co-defendants in a kidnapping case. 2018 SD 9, ¶ 2. At a change of plea hearing, the circuit court found the defendant made the plea knowingly and voluntarily and it was supported with a factual basis. *Id.* at ¶¶ 3-4. The court accepted the guilty plea to the reduced offense of aggravated assault, dismissed other pending charges, and agreed to sentence Hale according to the agreement. *Id.* Dialogue between the court and Hale included the following:

> "THE COURT: Okay. Knowing what you know now, would you like to go ahead and take the plea agreement?
>
> THE DEFENDANT: Yes."

*Id.* at ¶ 3.

[¶21] One week after Hale pleaded guilty, his co-defendants pleaded guilty. *Hale,* 2018 SD 9, ¶ 5. Two weeks later during a hearing, the court ordered a presentence investigation and told the State and Hale, via email, that it intended to reject the plea agreement. *Id.* The State and Hale argued the court accepted the plea agreement and Hale "cooperated in the prosecution of his codefendants as required by the plea agreement." *Id.* at ¶ 6. The circuit court eventually rejected the plea agreement, explaining that while it "expressly

6

accepted [Hale's] plea at the plea hearing, it did not accept the plea agreement—either expressly or impliedly." *Id.* ¶ 7.

[¶22] The South Dakota Supreme Court determined the court implicitly agreed to the plea agreement because the circuit court acted as if it accepted the plea agreement and its actions led to the defendant giving up his rights, including assisting in the prosecution of his co-defendants. *Hale*, 2018 SD 9, ¶¶ 17-18. Hale*,* by relying on the agreement and cooperating with the State to secure his co-conspirators' guilty pleas, gave up his "bargaining chip" and was entitled to receive the benefit of this bargain. *Id.* at ¶¶ 17-19. The Supreme Court held the court accepted the plea agreement and must sentence in accordance with the plea agreement. *Id.* at ¶ 19.

[¶23] Our district court's actions were different than the circuit court's proceedings in *Hale*. Therefore, we do not reach the same result as the South Dakota Supreme Court. The courts in both cases accepted the defendants' guilty pleas. 2018 SD 9, ¶ 4. Neither court specifically stated it was accepting or rejecting the plea agreement. *Id.* at ¶ 7. In *Hale*, that omission was significant because the court's discussions with Hale at the change of plea proceeding included him agreeing to accept "the plea agreement." *Id.* at ¶ 19. After Hale accepted the plea, and other charges were dismissed, the court did not reject the plea agreement until weeks later. *Id.* at ¶ 7.

[¶24] The United States Supreme Court also has considered and rejected the argument that accepting a guilty plea results in acceptance of an associated plea agreement. *United States v. Hyde*, 520 U.S. 670 (1997). In *Hyde*, a defendant pleaded guilty to several federal fraud counts, consistent with a plea agreement for dismissal of other charges. *Id.* at 671-72. The district court accepted the guilty plea but deferred deciding whether to accept the plea agreement. *Id.* at 672. The defendant attempted to withdraw his guilty pleas before sentencing or the court's decision whether to accept the plea agreement. *Id.* at 672-73. The court denied defendant's request, finding he had not provided a "fair and just reason" for withdrawing the plea. *Id.* at 673. The court ultimately accepted the plea agreement, entered judgment, and sentenced the defendant. *Id.* The Court of Appeals reversed, holding that "if the court defers

acceptance of a plea or of a plea agreement, the defendant may withdraw his plea for any or no reason, until the time that the court does accept both the plea and the agreement." *Id.* at 673, 680.

[¶25] The United State Supreme Court held, "a defendant may not withdraw his plea unless he shows a 'fair and just reason' under Rule 32(e)." *Hyde*, 520 U.S. at 671. Nothing in the text of Rule 11, which sets out the prerequisites to accepting a guilty plea and plea agreement, supports the Court of Appeals' holding. *Id.* at 674. That text shows that guilty pleas can be accepted while plea agreements are deferred and "the acceptance of the two can be separated in time." *Id.* The Court further explained:

> "The Court of Appeals equated acceptance of the guilty plea with acceptance of the plea agreement, and deferral of the plea agreement with deferral of the guilty plea. Nothing in the text of Rule 11 supports these conclusions. In fact, the text shows that the opposite is true: Guilty pleas can be accepted while plea agreements are deferred, and the acceptance of the two can be separated in time.
>
> The prerequisites to accepting a guilty plea are set out in subdivisions (c) and (d) of Rule 11. Subdivision (c) says: 'Before accepting a plea of guilty . . ., the court must address the defendant personally in open court and inform the defendant of, and determine that the defendant understands,' numerous consequences of pleading guilty. For example, the court must ensure the defendant understands the maximum possible penalty that he may face by pleading guilty, Rule 11(c)(1), and the important constitutional rights he is waiving, including the right to a trial, Rules 11(c)(3), (4). Subdivision (d) says: 'The court shall not accept a plea of guilty . . . without first, by addressing the defendant personally in open court, determining that the plea is voluntary.' The opening words of these two subdivisions are important: Together, they speak of steps a district court must take 'before accepting a plea of guilty,' and without which it 'shall not accept a plea of guilty.' Based on this language, we conclude that once the court has taken these steps, it may, in its discretion, accept a defendant's guilty plea. The Court of Appeals would read an additional prerequisite into this list: A district court shall not

8

> accept a plea of guilty without first accepting the plea agreement. But that 'prerequisite' is absent from the list set out in subdivisions (c) and (d), strongly suggesting that no such addition is warranted."

*Id.*

[¶26] Here, while the record of proceedings on January 17 and 18, 2023, could have been clearer about the district court's intentions, the court conducted a bifurcated proceeding for its consideration of the plea agreement. During those proceedings the court accepted Fischer's plea but did not dismiss the other pending charges. Nor had the court fully considered the plea agreement's sentencing proposal on the first day due to a delay in hearing the victim impact statements. After hearing the victims, the court was not satisfied with the proposed sentence. The plea agreement was rejected. Unlike in *Hale*, here Fischer was not prejudiced by rejection of the plea agreement because he did not give up his "bargaining chip." Like in *Hyde*, here the court separately considered the guilty plea and the plea agreement, which it was permitted to do. Therefore, on this record, and assuming without deciding a court can implicitly accept a plea agreement, *see* N.D.R.Crim.P. 11(c)(4) and (5), we conclude the court accepted Fischer's guilty plea but, by that action, did not accept the plea agreement.

## III

[¶27] Fischer argues that even if this Court does not follow the holding in *Hale*, his guilty plea to menacing should stand under N.D.R.Crim.P. 11(c)(5)(B). He reasons the plea to menacing was accepted and only a defendant can seek to withdraw an accepted guilty plea.

[¶28] Again, the parties did not provide a standard of review for this issue but, like the former, it involves an interpretation of law that we review de novo.

[¶29] Rule 11(c)(5)(B), N.D.R.Crim.P., requires that the district court "advise the defendant personally that the court is not required to follow the plea agreement and give the defendant an opportunity to withdraw the plea." Here,

9

the court acknowledged, but did not advise, Fischer he could withdraw his plea. However, Fischer does not cite any authority providing a remedy for a court's failure to provide this required advice. Additionally, we do not agree a defendant can unilaterally choose to enjoy part of the bargained for plea agreement without both him and the State being fully bound to all portions of the agreement. *See State v. Barber*, 217 P.3d 346, 348 (Wash. Ct. App. 2009) (specific performance entitles the defendant to bind the State to the bargained for recommendation, but does not bind the court). Therefore, the district court did not err by rejecting Fischer's guilty plea to the reduced charge of menacing as part of rejecting the State's agreement to reduce the terrorizing charge to menacing as part of the larger agreement.

IV

[¶30] Fischer argues the district court judge should have recused himself after watching the video of him shooting the door and stating the evidence would support a jury finding him guilty on all four counts.

[¶31] "We review the district court's decision on a motion for recusal for an abuse of discretion." *Rath v. Rath*, 2018 ND 138, ¶ 25, 911 N.W.2d 919. "An abuse of discretion may occur when the district court misinterprets or misapplies the law, or when the district court acts in an arbitrary, unreasonable, or capricious manner." *State v. Archambault*, 2022 ND 198, ¶ 10, 982 N.W.2d 8.

[¶32] "A judge shall disqualify in any proceeding in which the judge's impartiality might reasonably be questioned." N.D. Code of Judicial Conduct 2.11(A). "The law presumes a judge is unbiased and not prejudiced." *Lund v. Lund*, 2011 ND 53, ¶ 14, 795 N.W.2d 318. "The test for the appearance of impartiality is one of reasonableness and recusal is not required in response to spurious or vague charges of impartiality." *Id.*

[¶33] "A judge shall not make any public statement that might reasonably be expected to affect the outcome or impair the fairness of a matter pending or impending in any court, or make any nonpublic statement that might

10

substantially interfere with a fair trial or hearing." N.D.C.J.C. 2.10(A). "When making a recusal decision, a judge must determine whether a reasonable person could, on the basis of all the facts, reasonably question the judge's impartiality." *Rath*, 2018 ND 138, ¶ 25 (cleaned up). "Although a judge has a duty to recuse when required by the Code of Judicial Conduct, a judge also has an equally strong duty not to recuse when the circumstances do not require recusal." *Id.*

[¶34] On January 18, 2023, during the initial sentencing hearing, the judge stated, "[a]nd frankly, after watching that video, if the video was offered, I don't realistically see how he would be found not guilty of all of those charges." He did not make his comments in front of the jury but during a hearing where he explained why he rejected Fischer's plea agreement.

[¶35] During a February 2023 pre-trial conference, the judge found he did not need to recuse himself because "the Judicial Code of Conduct refers to out-of-court public statements, not in-court public statements." He further stated that, "explaining the judge's decisions is part of my job, and a big part of rejecting the agreement is basically my viewing of that evidence and determining that the agreement, in its form, was not an appropriate—or the punishment was not basically appropriate . . ." He continued, saying that his comments should not be introduced during trial and that they would screen jurors who are aware "of any proceedings" in this matter.

[¶36] In this case, the judge's comments are like those in *Archambault* where a judge stated outside the presence of the jury, "when your client gets in front of a police officer, having been advised of his *Miranda* rights and having signed a waiver of those rights and then confesses repeatedly to the offense, I think he's pretty much given up his presumption of innocence." 2022 ND 198, ¶ 12. This Court held the judge's comments did not show bias because the jury did not hear the comments nor use the comments in its deliberation. *Id.* at ¶ 13. Here, the judge explained why he was rejecting the plea deal. The comments were made before the court empaneled a jury, and the jury did not hear or use the comments in its deliberation. The judge's comments were a necessary part

11

of explaining why he rejected the plea agreement and the judge did not abuse his discretion in not recusing.

V

[¶37] We affirm Fischer's convictions for terrorizing and reckless endangerment and the district court's denial of Fischer's motion to recuse.

[¶38]   Jon J. Jensen, C.J.
        Daniel J. Crothers
        Lisa Fair McEvers
        Jerod E. Tufte
        Douglas A. Bahr

12